2013 Ark. App. 683

**Steve Jeffrey THRAPP, Appellant**

v.

**SMITH BLAIR, INC., Appellee.**

**No. CV–13–489.**

Court of Appeals of Arkansas.

Nov. 20, 2013.

Moore, Giles & Matteson, L.L.P., by: Greg Giles, for appellant.

Shackleford, Phillips & Ratcliff, P.A., El Dorado, By: Brian H. Ratcliff, for appellee.

ROBERT J. GLADWIN, Chief Judge.

Steve Jeffrey Thrapp appeals the April 24, 2013 decision of the Arkansas Workers' Compensation Commission (Commission), affirming and adopting the administrative law judge's (ALJ) decision that he failed to prove by a preponderance of the evidence that he sustained compensable injuries. On appeal, he argues that the Commission erred in so doing. We affirm.

Appellant, age forty-four, testified that he began working for appellee Smith Blair, Inc., as a "grinder" from May 1999 until sometime in 2004 or 2005. His duties as a "grinder" involved working with grinding equipment, which created significant vibrations. The grinder is a hand-held piece of equipment that is hooked to an air hose. He held it with his right hand holding the trigger, and controlled it with both hands. He worked eight-hour shifts on the grinder, with a ten-minute break in the morning, a thirty-minute lunch, and another ten-minute break in the afternoon. Appellant described two types of grinders, one with more torque than the other.

Appellant testified that in November 2004, he continued to work for Smith Blair, but instead of being a "grinder" he began working in the "622 work cell area." This work consisted of a rotation of duties. As part of the rotation, appellant was still required to do some grinding—approximately two hours a day, every other day.

Appellant testified that the grinding tool he was required to use in the "622 work cell area" was a smaller version than he had worked with from May 1999 through October 2004. The grinding he was required to do approximately two hours per day every other day in the "622 work cell area" required the use of only one hand

instead of two hands. He testified that sometime around 2009, he began experiencing numbness in his fingers and then his forearms. He said his problems began in 2009 while performing the "622 work cell area" work, but he never reported the problems to a supervisor until January 2011.

Appellant testified that he first began receiving treatment for his bilateral-upper-extremity problems around November 2010, when he went to Dr. Douglas, who sent him to Dr. Nnizar Souayah for a nerve-conduction test. The nerve-conduction study showed the following impression:

There is neurophysiological evidence of bilateral and at least moderate median nerve dysfunction of the wrist consistent with the diagnosis of bilateral and at least moderate carpal tunnel syndrome. The reduction of the conduction velocity of the right sensory ulnar nerve may suggest right sensory ulnar neuropathy.

Appellant was then referred to Dr. Thomas Young, an orthopedic surgeon, who eventually performed sequential carpal-tunnel releases.

Dr. Greg Smolarz, in his independent medical evaluation on March 24, 2011, found, "The nerve conduction studies indicate bilateral carpal tunnel syndrome and positive Tinel's was found in both wrists." Dr. Smolarz also opined as follows:

The patient is claiming that repetitive activities such as picking up metal on a continuous, frequent basis during the day is the cause of his carpal tunnel syndrome. In my opinion, that may very well be a small portion that contributes to the overall carpal tunnel syndrome, but also there's other factors involved including the presence of obesity, presence of chronic stiffness in his forearms, his regular activities that he performs when he's not at work.

In response to whether the treatment for appellant was related to the injury or accident, Dr. Smolarz stated as follows:

As indicated in question # 6, I feel like his work contributes at least somewhat to the diagnosis, but this is a multi-factorial problem for which one has to take into account all activities that the patient performs as well as other findings such as obesity and chronic stiffness due to inactivity as well as activities. Therefore, the treatment potentially is related to the injury or accident.

Dr. Smolarz concluded his evaluation, adding, "The major cause for the claimant's carpal tunnel syndrome is not more than fifty percent related to his work activities."

Based on the objective findings of bilateral-carpal-tunnel syndrome, appellant underwent a right-carpal-tunnel release on June 2, 2011. Then, on July 7, 2011, appellant underwent a left-carpal-tunnel-release surgery.

Dr. Young, who performed the surgeries, opined as follows:

My understanding also is that Mr. Thrapp is trying to file this under Workman's Compensation. Historically from an orthopedic standpoint, it has always been a tough call, as we frequently see people who are involved in rigorous repetitive work with carpal tunnel syndrome and yet on the other hand, you will see frequently folks with the same symptoms with a very different history, who have fairly sedentary jobs who can develop this as well. So it is difficult to come out with all certainty, and make the determination that this was work-related. I am happy to help Mr. Thrapp how I can in that regard, but again, it is a bit of a gray area.

When appellant's workers' compensation claim was denied, an impairment-rating

examination was performed by Dr. Rodney Caldwell, who found a nine-percent impairment to appellant's right wrist and a five-percent impairment to the left wrist. He further opined as follows:

> Mr. Thrapp has worked for Smith Blair for 13 years as both a welder and a grinder. He indicates his job duties included grinding and other various jobs in the work cell. It is my opinion that his repetitive use of bilateral wrists for these jobs could certainly result in carpal tunnel syndromes to both wrist [sic]. According to the AMA Guides to the Evaluation of Disease and Injury Causation, Table 9–14 on page 173, a combination of force and repetition shows strong evidence in relation to CTS. Vibration, with use of the grinder, also shows some evidence of relativity to CTS. It is my opinion that Mr. Thrapp would certainly have to use both his hands and his wrist in repetitive movements throughout his jobs as welder and grinder. Therefore, I feel that the carpal tunnel syndromes are related to the work that he has performed with the company since May 1999.

At the hearing on appellant's claim, Dr. Caldwell testified,

> I cannot agree with Dr. Smolarz's opinion where he said, "The major cause for the claimant's carpal tunnel syndrome is not more than 50 percent related to his work activities," because I have no idea how he came up with the number on that. I cannot put a number on that being the major cause for the carpal tunnel.

He later opined that appellant's work was the major cause of his injury, stating, "What changed my opinion from the time you asked to the time Mr. Giles asked was that I had time to think about it. I said that it was greater than fifty percent.

When you asked me the question, I could not give you a percentage at that time."

Appellant testified that since his last surgery for left-carpal-tunnel release, he has returned to work in the same "622 work cell area." He still has some symptoms in his hands when dealing with vibration at work, but he is able to work in the "622 work cell area" just like everybody else and has no restrictions in his work duties.

Appellant claimed he sustained compensable bilateral-carpal-tunnel injuries to his upper extremities due to his rapid and repetitive work-related activities, which developed over time. He claimed that he should be awarded temporary total-disability benefits, permanent partial-disability benefits, all associated medical treatment, and attorney's fees.

The ALJ found that appellant failed to prove by a preponderance of the evidence that he sustained compensable bilateral-carpal-tunnel injuries to either upper extremity while in appellee's employ. The ALJ's opinion reviews the three doctors' opinions, noting that Dr. Caldwell would not allow that appellant's work was the major cause of his injury, but later testified that, after having time to think about it, he believed that appellant's work was more than fifty percent of the cause. The ALJ stated:

> When looking at all the credible evidence now before the Commission, one cannot overlook the fact that the claimant was performing significant grinding vibratory work for five years with no symptoms and then significantly reduced such activities and still had no symptoms for an additional four to five years.

Appellant appealed the ALJ's denial to the Commission, which affirmed and adopted the ALJ's opinion. This appeal timely followed.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, and we affirm that decision if it is supported by substantial evidence. *Kimble v. Labor Force, Inc.*, 2013 Ark.App. 601, 430 S.W.3d 156. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* It is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Id.*

A claimant seeking benefits for a gradual-onset injury must prove by a preponderance of the evidence that the injury (1) arose out of and in the course of his employment; (2) caused internal or external harm to the body that required medical services or resulted in disability or death; and (3) was the major cause of the disability or need for medical treatment. *Kimble, supra;* Ark.Code Ann. § 11–9–102(4)(A)(ii)(b) & (E)(ii) (Repl.2012). "Major cause" is defined as more than fifty percent of the cause. Ark.Code Ann. § 11–9–102(14)(A).

The sole issue before us is whether the Commission's decision is supported by substantial evidence. Appellant contends that the evidence in the record points to only one logical conclusion, supported by the objective medical evidence—he suffered a gradual-onset injury, carpal-tunnel syndrome, as a result of the kinds of work he performed for Smith Blair over a period of twelve years. He points to the objective findings by Drs. Souayah and Smolarz, and that based on these, he underwent two carpal-tunnel-release surgeries. After those surgeries, appellant has been able to return to work with some symptoms but no restrictions in his work duties. He argues that Dr. Smolarz's opinion that his obesity contributed to his carpal tunnel should not preclude a finding of compensability because it is a preexisting condition, and employment circumstances which aggravate preexisting conditions are compensable. *Heritage Baptist Temple v. Robison,* 82 Ark.App. 460, 120 S.W.3d 150 (2003).

Smith Blair argues that substantial evidence exists to support the denial of appellant's claim. It contends that each of the three physicians' findings provides substantial evidence to support the Commission's decision. Dr. Young stated that it was difficult to make the determination that appellant's injury was work related. Dr. Smolarz opined that appellant's work might have been a small portion that contributed to appellant's carpal-tunnel syndrome, but noted other factors, including obesity, chronic stiffness in his forearms, and regular activities when not at work. He later added that the major cause of appellant's carpal-tunnel syndrome is not more than fifty percent related to his work.

Finally, Dr. Caldwell opined that it was his opinion "that repetitive use of the bilateral wrists for these jobs [welder and grinder] could certainly result in carpal tunnel syndromes to both wrists." In his deposition to inquire as to the basis of his opinion, Dr. Caldwell admitted that if appellant had not regularly used a grinder for two years before his symptoms he would want to know this. He did not recall getting any history like this from appellant. Dr. Caldwell conceded that he had not seen Dr. Smolarz's report that states that appellant's carpal-tunnel syndrome is not more than fifty percent relat-

ed to his work. He also admitted that he did not see the page in Dr. Young's records where he said appellant's condition was not work related. Dr. Caldwell could not put a number or percentage to the cause of appellant's injury, but did so when he was examined by appellant's attorney, stating that he thought more than fifty percent of the injury was attributable to appellant's work. He based |₈this opinion on the *Guides to the Evaluation of Disease and Injury Causation.* The ALJ gave Dr. Caldwell's opinion little weight based on his indecisiveness, making a credibility determination.

 The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *See Se. Ark. Human Dev. Ctr. v. Courtney,* 99 Ark.App. 87, 257 S.W.3d 554 (2007). It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Id.* This is a classic dueling-doctors case in which this court is bound by the Commission's findings. *See Boykin v. Crockett Adjustment Ins.,* 2013 Ark. App. 157, 2013 WL 828582.

Affirmed.

WALMSLEY and GRUBER, JJ., agree.