SLIP OPINION


# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-13-1019

| | |
|---|---|
| CINDY BALL<br>APPELLANT | **Opinion Delivered:** May 14, 2014 |
| V. | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| WYNNE PUBLIC SCHOOLS<br>APPELLEE | [No. G201223]<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the Arkansas Workers' Compensation Commission's (Commission) reversal of the administrative law judge's (ALJ) grant of temporary-total-disability (TTD) benefits to appellant on finding that appellant failed to prove that she is entitled to additional TTD benefits after April 23, 2012.[1] Appellant's sole point on appeal is that the Commission erred in finding that she was not entitled to additional TTD benefits for the period from July 11, 2012, through February 1, 2013. We affirm.

The pertinent facts in this case are as follows, as ascertained from testimony and exhibits submitted below. Appellant, appellee's employee, was a passenger in a vehicle on a work-related trip when she sustained a compensable injury on February 7, 2012. She was transported to the Med Regional Medical Center in Memphis, Tennessee, on the day of the accident. A CT scan, which she initially refused, revealed no acute findings. The

---

[1]The Commission also found that appellant failed to establish that appellee willfully refused her employment at any time; however, that finding is not being appealed by appellant.

CT scan showed that appellant had sustained a "small laceration and hematoma superficial to the left orbit[;]" a hematoma in the pelvic area, believed to have resulted from appellant's seatbelt; degenerative changes in the bilateral glenohumeral joint; and findings of acute sinusitis. After receiving stitches for the small laceration, appellant was released on the same day. She testified that she experienced a seizure, "the first one [she'd] ever had," that night at her home. She did not go to the emergency room despite being in the first trimester of a high-risk pregnancy.[2]

Appellant filed a notice of injury with the Commission on February 8, 2012, listing injuries to her left eye, abdomen, left chest and arm, and right leg; she did not include that she had suffered a seizure. A workers' compensation authorization for medical care was executed on the same date by Kim Davis citing injuries to the left eye and "bruising [to the] left chest area/arm, [and] right leg."[3] Dr. James Cathey was listed as appellant's doctor. Appellant's obstetrician, Dr. Cem Sarinoglu, excused appellant from work from February 8, 2012, through February 14, 2012.

On February 10, 2012, Dr. Cathey diagnosed appellant with an abdominal wall contusion and a left-eye contusion. According to appellant's testimony, at some point, Dr. Cathey "kept [her] out of work" pending her meeting Dr. Reginald Rutherford via Dr. Cathey's referral.

Dr. Rutherford performed an evaluation of appellant on February 27, 2012. His report, of the same date, acknowledged appellant's complaints of "head pain in the region

---

[2]Her unborn child was at an increased risk of being born with Trisomy 18; the child was born healthy.

[3]Davis is an assistant employed by appellee.

of her laceration [and] difficulty with memory and dizziness," but he went on to note that a CT scan "revealed evidence of sinusitis but not traumatic brain injury." He opined that "[p]harmacological intervention [regarding her isolated seizure would] only be required if a second seizure occurs or a [sic] EEG reveals seizure diathesis." He referred appellant to Dr. John Roddey Dickins for a consult on appellant's post traumatic dizziness and to Dr. Judy White Johnson for a neuropsychological evaluation. Dr. Rutherford excused appellant from work pending the completion of testing.

Dr. Dickins met with appellant on April 5, 2012, and noted in his report that he "believe[d] she [could] return to work now" with the caveat that "at this point[, he] would hold off driving." His only other restriction on appellant was that she "not be on scaffold [sic] unprotected."

In a letter to Dr. Rutherford dated April 9, 2012, Dr. Judy White Johnson stated that "[appellant's] dizzy spells are thought by her obstetrician to be normal for her pregnancy" and that appellant "believes all her symptoms are associated with the pregnancy." She went on to state that:

> The pattern of the validity scales on the [Minnesota Multiphasic Personality Inventory-2-RF] reflects an individual who is over-reporting physical, cognitive, and psychological problems. Her over-reporting of somatic symptoms is reflected in the assertion of a considerably larger than average number of somatic symptoms rarely described by individuals with genuine medical problems. Ms. Ball has a profound lack of insight into her psychological functioning. Expect significant denial, lack of self-awareness, and a striving to present herself in a very positive light.

Finally, Dr. Johnson stated that "the overall pattern of the neuropsychological test findings is within normal limits without indications of traumatic brain injury."

3

In his April 24, 2012 office visit report, Dr. Rutherford stated that appellant's EEG was normal, that she was "ready to return to work[,]" and was "at maximum medical improvement." He advised that "[t]here is no recommended workplace restriction and no recommended permanent partial impairment." He issued a release to appellant on the same date stating that appellant may "return to work at regular duty with no restrictions."

Appellant testified that she returned to work on April 24, 2012, and continued working until the end of the school year. Kathy Lee, appellee's Assistant Superintendent, testified regarding appellant's return to work. Lee testified that when appellant returned, she and Lee "reviewed her doctor's releases and [they] kind of wrote a little contract where [Lee] asked [appellant] what she felt like she could do, couldn't do, and then, [Lee] put some restrictions on things [she] did not want appellant doing since she was pregnant." Lee made a written offer of a receptionist job to appellant until her driving restriction was removed, but she rejected the offer stating that "she wanted to get back to driving." Appellant acknowledged receiving TTD benefits from February 8, 2012, until April 23, 2012.

In a letter dated April 26, 2012, Dr. Dickins released appellant from his care, stating that it was his understanding that appellant's symptoms "have cleared following our physical therapy treatment" and that he had "no reason to limit [appellant's] activities at work other than what would normally be limited by her pregnancy." He opined that "at the moment[,] I give [appellant] a zero partial permanent disability based on the evidence that we have."

Appellant testified that she had another seizure in June; again, she did not seek emergency medical attention. She testified that after her June seizure, she stayed in bed most of the time as moving around made her feel worse. She noted that lying down when she started feeling bad had "worked where [the seizures had] not happened anymore." She stated that she still experiences severe headaches and dizzy spells. She went to the doctor regarding the June seizure on July 11, 2012.

In an office visit report dated July 11, 2012, Dr. Rutherford stated that appellant had returned for a follow up reporting "los[ing] consciousness, and demonstrat[ing] convulsive movements [of the] arms and legs without tongue contusion or incontinence." He advised appellant that "she should not be driving under any circumstances based upon her current history." He issued a doctor's note to her on the same date noting that appellant "may return to work with restrictions[:] no driving." Appellant admitted this, noting that she wasn't told that she could drive until the week before the hearing.[4]

Appellant was hospitalized in August in both Little Rock and Forrest City for extreme severe headaches, dizziness, weakness, and numbness in her feet[5] and blood pressure that was "through the roof." She returned to being treated by her local physician, Dr. Cathey, who gave her medication for her headaches only. She missed a follow-up

---

[4]Dr. Cathey, not Dr. Rutherford, released appellant from her no-driving restriction. However, we note that appellant admitted that she had been driving, against doctor's orders, though she asserted that she only drove "short distances when she needed to." Lee testified to seeing appellant drive to the office on at least two occasions during the summer of 2012.

[5]Appellant admitted experiencing numbness in her hands before the accident due to carpal tunnel, but asserted that she had not experienced numbness in her feet.

EEG and MRI appointment with Dr. Rutherford in Little Rock due to a lack of transportation. Despite her assertion that she failed to continue treatment in Little Rock with Dr. Rutherford due to a lack of transportation, appellant admitted that the workers' compensation carrier had provided her transportation on one visit at her request and that she had not asked for transportation at any other time.

Appellant also testified that she ceased being treated by Dr. Rutherford due to a lack of transportation, but she asserted that she requested another physician. Misty Thompson, Workers' Compensation Claim Supervisor for the Arkansas School Board Association, who handled appellant's claim, testified that appellant had failed to follow through with the request for another physician. Appellant testified that she failed to follow through with the change of physician request because she "[didn't] have internet access." Thompson also testified that she had not denied authorization to appellant for further visits to Dr. Rutherford and had authorized the additional testing Dr. Rutherford sought following appellant's July 11, 2012 office visit. Appellant admitted that her "pregnancy held up [her] treatment."

Prior to the February 7, 2012 accident, appellant had been treated for nearly all the symptoms she complained of after the accident. She was treated by Dr. Glen Loveday for "numbness and tingling in both upper extremities" on February 4, 2008. She was treated by Dr. Sudhir Kumar, her family doctor, for fibromyalgia and a "lot of aches and pains" where "even [her] fingers hurt" on February 27, 2009; on June 4, 2010 for "aches and pains all over" with "headaches at times[;]" on August 15, 2010, for fatigue and "three

different headaches, one is [a] headache, one is [a] head pain, [and] one is [a] migraine[;]" and on February 15, 2011, for narcolepsy.

Appellant testified that she had episodes before the accident where she had "passed out" but that they were not seizures. She stated that she had not been told that "some of her seizures were related to [her] narcolepsy." She acknowledged having been treated for fibromyalgia, dizziness, fatigue, and headaches in the past, but stated that the "headaches [she has] now are not like any other [she had] had before." She described the headaches and migraines she has now, in comparison to the headaches and migraines she had in the past, as follows:

> These are excruciating pain headaches where I feel like if somebody could just drill a hole in my head, it would release some of the pressure and the medications that I have been given for them are not working. They go away after a long period of time. They last days. When I had my headaches in 2010 and before, I could take BC Powder or Excedrin and Maxalt when they were really bad. Those medications do not work today.

She attributed her symptoms in 2009 to her carpal tunnel diagnosis for which she applied for Social Security Disability, but was denied.[6] At some point, appellant sought additional TTD benefits for the period of July 11, 2012, through February 1, 2013; appellee denied the request.[7] At some point, appellant filed a claim with the Commission.

A pre-hearing order was filed November 26, 2012, reflecting the parties' stipulations that the Arkansas Workers' Compensation Commission had jurisdiction over appellant's claim; that an employment relationship existed at all times pertinent, including

---

[6]She applied, and was denied, again in October 2012.

[7]Neither the date of appellant's request for additional benefits, nor the date appellee denied the request, appear in the record.

February 7, 2012, when appellant sustained compensable injuries; and that appellant earned an average weekly wage of $339.52, which generated compensation benefit rates of $226.00 per week for TTD benefits and $170.00 per week for permanent partial disability benefits. The order also reflected the issue to be addressed at the February 5, 2013 hearing as a claim for additional temporary total disability benefits.[8]

Following a February 8, 2013 hearing, the ALJ filed an opinion on April 10, 2013, finding that claimant sustained her burden of proof by a preponderance of the evidence that, in addition to the prior period, she remained temporarily totally disabled and within her healing period for the period of July 1, 2012, continuing through February 2013, and correspondingly was entitled to temporary total disability benefits.[9] Appellant was awarded temporary-total-disability benefits at weekly compensation rate of $226.00 for the period commencing July 11, 2012, and continuing through February 1, 2013.[10]

---

[8]Other issues to be addressed included a claim for additional medical benefits subsequent to July 11, 2012 (appellant withdrew this claim at the February 8, 2013 hearing), a claim regarding unpaid medical bills, a claim for 505(a) benefits, and controverted attorney's fees; however, these issues are not before this court.

[9]The ALJ also found that appellant failed to sustain her burden of proof that appellee had controverted her entitlement to continued reasonably necessary medical treatment in connection with the February 7, 2012 compensable injury and failed to sustain her burden of proof by a preponderance of the evidence that the appellant refused to return her to work without reasonable cause. Neither of these issues is before this court.

[10]Appellant was also awarded the maximum attorney's fee. Appellee was ordered, as part of claimant's award, to continue to pay all reasonably necessary medical, hospital, nursing, and other apparatus, expenses, growing out of and in connection with the treatment of the February 7, 2012, compensable injury of the claimant, to include medical related mileage.

On September 24, 2013, the Commission filed an opinion reversing the ALJ's opinion, finding that appellant failed to prove that she was entitled to additional benefits of any kind after April 23, 2012.[11] This timely appeal followed.

When reviewing a decision of the Arkansas Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, and we affirm that decision if it is supported by substantial evidence.[12] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[13] The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm.[14] It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence.[15] We will not reverse the Commission's decision unless we are convinced that fair-minded persons

---

[11] The Commission also found that appellant failed to prove that appellee refused to return her to work without reasonable cause pursuant to Arkansas Code Annotated section 11-9-505(a); this finding is not appealed by appellant to this court.

[12] *Thrapp v. Smith Blair, Inc.*, 2013 Ark. App. 683, at 5, ___ S.W.3d ___, ___ (citing *Kimble v. Labor Force, Inc.*, 2013 Ark. App. 601, ___ S.W.3d ___).

[13] *Id.*, 2013 Ark. App. at 5-6, ___ S.W.3d ___, ___.

[14] *Jordan v. Home Depot, Inc.*, 2013 Ark. App. 572, at 6-7, ___ S.W.3d ___, ___ (citing *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007)).

[15] *Id.*, 2013 Ark. App. at 6, ___ S.W.3d at ___ (citing *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008)).

with the same facts before them could not have reached the conclusions arrived at by the Commission.[16]

When an injured employee is totally incapacitated from earning wages and remains within her healing period, she is entitled to temporary total disability.[17] The healing period continues until the employee is restored as much as the permanent character of her injury will permit.[18] The healing period ends when the underlying condition causing the disability becomes stable and no treatment will improve it.[19]

In this case, appellant was injured on February 7, 2012. She was paid TTD benefits for the period beginning February 8, 2012, and ending April 23, 2012. On April 24, 2012, Dr. Rutherford released appellant from his care with no restrictions, recommending no partial impairment rating, and with the opinion that she had reached maximum-medical improvement. Appellant returned to work on April 24, 2012, performing her regular duties, where not limited by her pregnancy, for she testified that "the list of things she couldn't do [were] because of her pregnancy[,]" not due to symptoms arising from the accident. On April 26, 2012, Dr. Dickins also released appellant from his care having "no reason to limit her activities at work other than what would normally be limited by [appellant's] pregnancy" and gave her a zero partial impairment rating.

---

[16] *Thrapp*, 2013 Ark. App. 683, at 6, ___ S.W.3d at ___ (citing *Kimble v. Labor Force, Inc.*, 2013 Ark. App. 601, ___ S.W.3d ___).

[17] *Butler v. Lake Hamilton School Dist.*, 2013 Ark. App. 703, at 4, ___ S.W.3d ___, ___ (citing *Riggs v. B & S Contractors, Inc.*, 2010 Ark. App. 554, 377 S.W.3d 466).

[18] *Id*.

[19] *Id*.

It was during appellant's July 11, 2012 office visit that she reported her second seizure, which she testified occurred the previous month. Dr. Rutherford's report on that visit includes appellant's self-reported symptoms of a seizure and increasing headache, his recommendation that she cease driving, and his plan to complete a MRI study of her brain and an ambulatory EEG "for the problem to be further evaluated." Because of appellant's failure to follow through with Dr. Rutherford's recommendations, no medical evidence could be obtained. Accordingly, there was no medical evidence in existence before the Commission to support a finding that appellant had reentered her healing period after the date Dr. Rutherford determined that she had reached maximum-medical improvement.

Additionally, appellant had not worked since leaving the school district, despite her the doctors having released her to return to work without restrictions other than those relating to her pregnancy. Appellee was willing to accommodate those restrictions. As such, appellant put no evidence before the Commission proving that she was totally incapable of earning wages.

Because appellant failed to prove that she had reentered her healing period and failed to prove that she was totally incapable of earning wages, there was substantial evidence to support the Commission's finding that appellant failed to prove that she was entitled to additional TTD benefits after April 23, 2012.

Affirmed.

WALMSLEY and WOOD, JJ., agree.

*Talbott & Ladd, P.A.,* by: *Kathleen Talbott*, for appellant.
*Coplin, Hardy & Stotts, PLLC*, by: *Betty J. Hardy*, for appellees.