KENNETH S. HIXSON, Judge
Appellants, Arkansas Health Center (AHC) and Arkansas Insurance Department, Public Employee Claims Division (PECD), appeal from a November 22, 2017 opinion by the Arkansas Workers' Compensation Commission (Commission). The Commission granted additional medical treatment to appellee Stephanie Burnett-specifically, the surgery recommended by Dr. James R. Adametz and additional temporary total-disability (TTD) benefits from February 23, 2017, until a date yet to be determined. On appeal, appellants contend *410 that substantial evidence does not support the Commission's decision. We affirm.
Appellee worked as a certified nursing assistant for AHC before her injuries. The parties stipulated that she sustained a compensable back injury on April 11, 2016. Appellee claimed that she injured her back while she was showering a patient. She was treated at Saline Memorial Hospital and discharged with "THORACIC STRAIN." After returning to work, appellee sustained a stipulated compensable neck injury on April 15, 2016. Appellee claimed that the right side of her neck popped and that her right side went numb when she was assisting a resident out of bed into her wheelchair. She was treated at Saline Memorial Hospital and discharged with "THORACIC STRAIN, THORACIC MUSCLE SPASM."
Appellee was subsequently treated conservatively by Dr. Bruce W. Randolph at University of Arkansas for Medical Sciences. An MRI of appellee's lumbar, thoracic, and cervical spine was taken in May 2016. That MRI revealed the following relevant impressions according to the radiologist:
1. Minimal degenerative changes in the lower cervical spine at C6-7. There is no canal stenosis of neural foraminal narrowing.
2. Minimal degenerative changes in the lower lumbar spine. There is no canal stenosis or neural foraminal narrowing.
3. The cord appears normal in size and signal.
Dr. Randolph noted that he considered those findings to be within normal limits and that he was releasing her from his care to resume her regular duties.
Appellee formally changed physicians and began receiving treatment from Dr. Adametz on June 21, 2016. Dr. Adametz examined appellee and reviewed her May 2016 MRI. Regarding the MRI, Dr. Adametz noted that
[t]he cervical spine shows sort of a central disc herniation at C6-7, it is not causing any real cord compression or anything, but is not normal. There is a questionable abnormality at C5-6 in the foramen, but I could not see it on all the views. The rest of the neck looks okay. The thoracic spine did not show anything significant. The lumbar spine showed multiple small bulging discs, but not anything major that looked surgical or anything.
He recommended conservative treatment at that time. Appellee received physical therapy, epidural steroid injections, and medication.
On October 7, 2016, Dr. Adametz noted that appellee stated her pain had "settled down a bit" and that it was more localized in her neck and shoulder. She complained of pain in her left arm and numbness in the index and middle fingers of the left hand, which Dr. Adametz stated was consistent with the C6-7 disc abnormality he observed in the MRI. Dr. Adametz further noted that appellee indicated that she "can live with her low back and mid-back, it is the neck, shoulder and arm that is killing her." Documentation in the record reflects that appellee subsequently received additional physical therapy, but she claimed that her symptoms continued.
Dr. Adametz indicated that he wanted to order a second MRI before he considered any surgical options. A January 24, 2017 MRI indicated the following relevant impressions according to the radiologist:
C5-6: Shallow disc bulge slightly flattens the anterior thecal space but without significant mass-effect.
C6-7: Shallow disc osteophyte complex and mild right unconvertebral hypertrophy cause mild central stenosis slightly flattening the anterior surface *411 of the cord and mild right foraminal narrowing. There is good fluid maintained posterior to the cord at this level.
....
Multilevel spondylitic changes as above most prominent at C6-7 where there is mild central stenosis and mild right foraminal narrowing. I do not identify pathology to explain the patient's reported left upper extremity symptoms.
Dr. Adametz stated in a progress note that he reviewed the second MRI and met with appellee on January 24, 2017. Dr. Adametz explained that the MRI scan showed "a small disc herniation at C6-7, which is a little bit eccentric to the left side." Therefore, he offered appellee an anterior discectomy and fusion at C6-7, opining that surgery might benefit that particular spot because it looked the most significant. In a form requesting the surgery that was sent to the PECD, Dr. Adametz checked "Yes" to the question, "Can you state within reasonable degree of medical certainty if need for surgery is greater than 50% related to our work injury?" Furthermore, in a February 10, 2017 progress note, Dr. Adametz noted that appellee desired to go ahead with the surgery. He additionally noted that "[s]he understands that I have certainly not made any kind of guarantee of the success of it, but I think that is the best thing I have to offer her. We are waiting on approval on it."
Dr. Steven L. Cathey conducted an independent neurosurgical evaluation and ultimately disagreed with Dr. Adametz's diagnosis and recommendation. Dr. Cathey specifically noted the following on February 23, 2017:
There are degenerative changes particularly in the cervical area but no significant canal stenosis, disc herniation, etc. We also reviewed an updated MRI scan of her cervical spine ordered by Dr. Adametz at Arkansas Surgical Hospital last month. There is reversal of the cervical lordosis but no significant canal stenosis, nerve root compression, etc.
At this point, the diagnosis is degenerative cervical disc disease. Her lumbar study is negative so I do not have a good explanation for her chronic low back pain. Although Dr. Adametz has offered her an anterior cervical decompression and fusion at C6-7, unfortunately, I do not believe the patient will benefit from spinal surgery or other neurosurgical intervention. The patient was adamant in her disagreement with my assessment of her clinical presentation and her long-term prognosis.
At this point, she is at maximal medical improvement with regard to the occupational injuries of 4/11/16, as well as the subsequent event on 4/15/16. I see no additional indication for treatment related to these events.
There is no impairment rating as there are no objective findings either clinically or radiographically related to the occupational injury in question.
As far as her work is concerned, based on today's exam, I believe she can be released to return to full employment without restriction.
Thereafter, appellants disputed that appellee was entitled to the surgery recommended by Dr. Adametz and additional TTD benefits, and a hearing was held before the administrative law judge (ALJ). At the hearing, appellee testified as to her injuries, pain, and the case history as already set out above. In addition to the medical documents introduced, deposition testimony from both Dr. Adametz and Dr. Cathey were introduced into evidence. In his deposition, Dr. Adametz reiterated his course of treatment and findings, and he stated that he recommended that appellee undergo surgery based on his "objective *412 finding" that she has a "disc herniation at the C6-7 on the MRI." In contrast, Dr. Cathey reiterated in his deposition his opinion that the degeneration at C6-7 was not an objective finding that related to appellee's symptoms of numbness or weakness on the left side of her body. He further opined that the degeneration or disc herniation identified on the MRI was not unexpected and was, in fact, normal for appellee's age. Although he diagnosed appellee with degenerative cervical-disc disease, he stated that he would not recommend surgery as a reasonable and necessary treatment. Instead, Dr. Cathey did not recommend any other medical treatment but would recommend releasing her to work without any restrictions.
Additionally, our record contains an independent peer-review report from the Medical Review Institute of America, Inc., regarding appellee's proposed treatment. The report specifically opines that "the proposed anterior cervical discectomy and fusion is indicated and medically appropriate." Thus, the report agreed with Dr. Adametz's recommendation.
The ALJ filed his opinion on June 1, 2017, wherein he found that appellee failed to satisfy her burden of proof that she was entitled to additional medical treatment or additional TTD. Appellee appealed the ALJ's decision, and on November 22, 2017, the Commission, in a unanimous decision, reversed the ALJ and made the following relevant findings:
In the present matter, the Full Commission finds that the claimant proved by a preponderance of the evidence that she was entitled to surgery recommended by Dr. Adametz. The parties stipulated that the claimant sustained a compensable injury on April 11, 2016. The claimant was diagnosed with a thoracic strain after injuring her back at work on April 11, 2016. The parties stipulated that the claimant sustained a compensable neck injury on April 15, 2016. The Claimant testified that the right side of her neck "popped" while helping a patient from bed into a wheelchair. The claimant received conservative medical treatment beginning April 15, 2016.
Dr. Randolph's assessment on April 19, 2016 included "Muscle strain with spasm." An MRI of the claimant's cervical spine on May 12, 2016 showed "Minimal degenerative changes in the lower cervical spine at C6-7." Dr. Randolph opined on May 17, 2016, "I consider these findings to be within normal limits." Dr. Randolph assessed maximum medical improvement and released the claimant from his care on May 31, 2016. However, because the claimant requested a second opinion, Dr. Randolph planned a neurosurgical referral. Dr. Adametz therefore began treating the claimant on June 21, 2016. Dr. Adametz initially planned conservative medical treatment. The claimant thereafter underwent cervical epidural steroid injections and physical therapy.
Dr. Adametz arranged additional diagnostic testing. An MRI of the claimant's cervical spine on January 24, 2017 showed "Multilevel spondylitic changes as above most prominent at C6-7 where there is mild central stenosis and mild right foraminal narrowing." Dr. Adametz reported on January 24, 2017, "The only thing I have left to offer would be an anterior discectomy and fusion at C6-7." Dr. Adametz opined at deposition that there was at least a "50 percent or greater" chance that the claimant would benefit from surgery. We recognize Dr. Cathey's contrasting opinion that the claimant would not benefit from surgery. However, it is within the Commission's province to weigh all of the medical evidence *413 and to determine what is most credible. Minnesota Mining & Mfg. v. Baker , 337 Ark. 94, 989 S.W.2d 151 (1999). The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. Poulan Weed Eater v. Marshall , 79 Ark. App. 129, 84 S.W.3d 878 (2002).
In the present matter, the Full Commission finds that Dr. Adametz's opinion is more credible than Dr. Cathey's opinion and is entitled to significant evidentiary weight. The Full Commission finds that the evidence of record corroborates Dr. Adametz's opinion. Said evidence includes the February 7, 2017 report from Medical Review Institute of America, "The proposed procedure is a C6-7 anterior cervical discectomy and fusion (ACDF).... The proposed anterior cervical discectomy and fusion is indicated and medically appropriate." The respondents argue on appeal, "There are no objective findings to support the complaints the claimant makes, just her subjective complaints of pain." Nevertheless, the Full Commission notes the parties' stipulation that the claimant sustained compensable injuries on April 11, 2016 and April 15, 2016. The claimant is not required to offer objective medical evidence to prove that her healing period continues. Chamber Door Indus., Inc. v. Graham , 59 Ark. App. 224, 956 S.W.2d 196 (1997).
Based on our de novo review of the entire record, the Full Commission finds that the claimant proved she was entitled to additional medical treatment, specifically surgery recommended by Dr. Adametz. The Full Commission finds that the recommended surgery is reasonably necessary in accordance with Ark. Code Ann. § 11-9-508(a) (Repl. 2012). The respondents paid temporary total disability benefits until February 23, 2017. The Full Commission finds that the claimant remained within a healing period as of February 23, 2017 and was totally incapacitated from earning wages. The claimant therefore proved she was entitled to temporary total disability benefits from February 23, 2017 until a date yet to be determined. See Ark. State Hwy. Dept. v. Breshears , 272 Ark. 244, 613 S.W.2d 392 (1981).
The claimant's attorney is entitled to fees for legal services in accordance with Ark. Code Ann. § 11-9-715(a) (Repl. 2012). For prevailing on appeal to the Full Commission, the claimant's attorney is entitled to an additional fee of five hundred dollars ($500), pursuant to Ark. Code Ann. § 11-9-715(b) (Repl. 2012).
In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Prock v. Bull Shoals Boat Landing , 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. Id. Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. Id. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. Wilson v. Smurfit Stone Container , 2009 Ark. App. 800, 373 S.W.3d 347 (2009). When there are contradictions in the evidence, it is within the Commission's *414 province to reconcile conflicting evidence and determine the facts. Id. Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Prock , supra.
Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." However, a claimant bears the burden of proving entitlement to additional medical treatment. LVL, Inc. v. Ragsdale , 2011 Ark. App. 144, 381 S.W.3d 869. What constitutes reasonably necessary treatment is a question of fact for the Commission. Id. The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. Id. Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. Id.
On appeal, appellants argue that the Commission erred in awarding additional medical treatment and benefits because there were no objective findings to support appellee's subjective complaints of pain. This argument, however, lacks merit because, even if true, appellants stipulated that appellee sustained compensable injuries to her back and neck, and a claimant who has sustained a compensable injury is not required to offer objective medical evidence to prove entitlement to additional benefits. See Chamber DoorIndus., Inc. v. Graham , 59 Ark. App. 224, 956 S.W.2d 196 (1997) ; Ark. Dep't of Cmty. Corr. v. Moore , 2018 Ark. App. 60, 2018 WL 632164. Additionally, appellants repeatedly argue that Dr. Adametz merely made an "offer" of surgery rather than state that he "recommended" it. However, our record does not support this assertion. On February 10, 2017, Dr. Adametz stated, "I think [surgery] is the best thing I have to offer her." Further, to the extent there was still any ambiguity, Dr. Adametz clarified [in his deposition] that he was "recommending" surgery.
Ultimately, the Commission was confronted with multiple medical opinions and credited Dr. Adametz's recommendation, which was also supported by the Medical Review Institute of America, Inc. It is within the Commission's province to reconcile conflicting evidence, including the medical evidence. Boykin v. Crockett Adjustment Ins. , 2013 Ark. App. 157, 2013 WL 828582. The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. See Ark. Human Dev. Ctr. v. Courtney , 99 Ark. App. 87, 257 S.W.3d 554 (2007). It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. Id. Under the particular facts of this case, we cannot say that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Therefore, we affirm the Commission's decision to award additional medical treatment.
Appellants finally contest the Commission's award of additional TTD benefits. TTD is appropriate during the healing period when an employee suffers a total incapacity to earn wages. Fuller v. Pope Cty. Judge , 2018 Ark. App. 1, 538 S.W.3d 851. Appellants argue that the Commission erred in awarding additional TTD because Dr. Cathey opined that appellee did not need surgery and that there *415 was no medical reason to support the work restrictions. However, because we are affirming the Commission's decision to credit Dr. Adametz's opinion and its decision that appellee is entitled to additional medical treatment, we also affirm the Commission's award of additional TTD benefits.
Affirmed.
Glover and Vaught, JJ., agree.