ROBERT J. GLADWIN, Judge
Appellants Lowe's Home Centers, Inc. (Lowe's), and Sedgwick Claims Management *901 appeal the March 29, 2018 opinion of the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the September 8, 2017 decision of the administrative law judge (ALJ) in favor of appellee Bobby J. Robertson, specifically finding that appellee proved by a preponderance of the evidence that he is entitled to additional medical treatment recommended by Dr. Kathryn McCarthy in the form of spinal-fusion surgery and also to temporary total-disability (TTD) benefits from May 6, 2013 (with the exception of the one day that he worked), until he is declared to be at maximum medical improvement (MMI) by Dr. McCarthy following spinal-fusion surgery. Appellants argue that substantial evidence does not support the awards. We affirm.
Appellee was employed at Lowe's as a night-shift stocker.[1] His duties included unloading trucks using a forklift to move heavy objects and pallets. Appellee used a dolly to roll the product and deliver boxes to an area of the store where he would sort, wrap, and place merchandise on a cart to be delivered to the appropriate department.
Appellee suffered an admittedly compensable low-back injury on January 8, 2013, in the course and scope of his employment with Lowe's. He was pushing a flat cart, which was overloaded with plastic miniblinds, and he suddenly experienced an immense amount of pain in his lower back. Despite being "stuck in a hunched-over position," he managed to finish his shift that night. Appellee was unable to report his injury during that shift because the administrative personnel office was closed.
The following day, his pain was so severe that he was unable to independently get out of bed, and his wife had to help him take a shower and dress. As a result, appellee decided that he needed to see a doctor, and he reported his injury to Ms. Debbie Coatney, head of human resources, and she sent him to the company physician, Mark Larey, D.O.
On January 10, 2013, two days after the accident, Dr. Larey diagnosed appellee with a lumbar strain with spasm and recommended work restrictions, a medicine regimen, and ice/heat protocol. On January 17, 2013, appellee-still in pain and with restricted movement-returned to Dr. Larey, who ordered an MRI of the lumbar spine. An MRI without contrast performed on January 25, 2013, revealed an L5-S1 disk bulge with thecal sac effacement consistent with the diagnosis of low-back strain, which resulted in a recommendation to consult with a neurosurgeon for an evaluation for possible surgical correction.
Appellee saw neurosurgeon Dr. James Mason on February 22, 2013, who recommended that he be off work for a month, wean off the steroid medication, start physical therapy, and change medication. Dr. Mason stated that if those things did not work, he recommended considering an epidural steroid injection, but he did not recommend surgery at that time. Appellee next saw Dr. Mason on March 22, 2013, at which time he reported that the physical therapy and anti-inflammatory medicine had not helped, with his symptoms worsening. Dr. Mason recommended a myelogram and post-myelogram CT scan for further review and that appellee remain off work until April 6, 2013.
The CT scan performed on March 29, 2013, indicated very shallow disc bulges at L4-L5 and L5-S1 causing mild lateral recess *902 narrowing without definite neural impingement and bilateral L5-S1 spondylosis without spondylolisthesis. The corresponding myelogram findings indicated that "[t]he vertebral body heights and alignment of the vertebrae are preserved. The intervertebral disc heights are preserved. There is no bone fracture or destructive bone lesion. There is no canal stenosis or nerve root cut off."
On April 5, 2013, Dr. Mason reviewed the test reports and noted "unusual combination of pars defects at L4 and L5 with bilateral fractures through the pars. These are both stress fractures. I think that this explains well his marked low-back pain in the absence of any real findings noted on his MRI scan." He recommended that appellee wear a lumbosacral corset to stabilize his back, and he noted that it was likely that appellee would require a lumbar fusion at multiple levels to stabilize his back-L4-L5 and the sacrum-which is not a procedure that he performed. Dr. Mason referred him to Dr. McCarthy, and he told appellee to stop smoking to prepare for possible surgical intervention. He was to remain off work until his appointment with Dr. McCarthy.
On April 18, 2013, Dr. McCarthy evaluated appellee and diagnosed him with mild disc bulge and bilateral pars defects present at L4 and L5 and spondylolisthesis at L5-S1 and prescribed physical therapy without traction, a course of Mobic, and bilateral pars injections at L4 and L5. She noted that he could return to work on May 6, 2013, after beginning physical therapy, with restrictions that included no bending, no lifting over ten pounds, no twisting, and no sitting or standing for long periods of time. Although she wanted to see him back in one month after he began another round of physical therapy and had obtained the injections, appellee did not return to Dr. McCarthy for over two years.[2]
On December 30, 2015, appellee returned to Dr. McCarthy. She scheduled him for a spinal injection and recommended that, if it did not relieve his pain, he undergo a fusion surgery for his bilateral pars fractures at L4 and L5 and spondylolisthesis at L5-S1.
On January 26, 2016, when Dr. McCarthy saw appellee, he related to her that the spinal injection did not provide any relief. Dr. McCarthy stated, "Aside from surgical intervention, I believe he has reached maximum medical improvement."
The ALJ conducted a hearing on June 23, 2017, regarding appellee's entitlement to additional medical benefits in the form of a spinal-fusion surgery recommended by Dr. McCarthy and TTD benefits. On September 8, 2017, the ALJ issued an opinion in appellee's favor:
After weighing the evidence impartially and without giving the benefit of doubt to either party, I find that the claimant proved by a preponderance of the evidence that the treatment recommended by his treating physician, Dr. McCarthy, in the form of "a L4-S1 posterior spinal fusion, with interbody grafting," is causally related to his admittedly compensable low-back injury of January 8, 2013.
Specifically, it is undisputed that prior to the claimant's compensable back injury, he suffered from prior degenerative disease, at L4-5 and L5-S1, and pars defects at L4 and L5. It is well-established in workers' compensation law that merely identifying a pre-existing degenerative condition will not automatically *903 support a finding that the claimant failed to prove that his need for treatment is causally related to the January 8, 2013 compensable injury; especially when the preexisting condition was asymptomatic prior to the injury but was exacerbated and ultimately resulted in his need for lumbar fusion surgery. Here, the evidence demonstrates that at time of his compensable injury, the claimant was only 29 years old. The claimant had no prior accidents or events relating to his back, in fact, prior to his injury, the claimant did not suffer any back pain whatsoever, or other related symptomology. There is no evidence demonstrating that claimant had ever sought any medical treatment for his back prior to this work injury of January 8, 2013. Nor was there any evidence that the claimant had ever complained to his employer or family members about any back difficulties. This is established by the claimant's testimony and [claimant's mother-in-law] Ms. [Terry] Gartin's testimony.
The claimant credibly testified that prior to the incident, he did not take any over-the-counter medications for his back. He specifically denied any type of restrictions being previously imposed on him by a doctor. Moreover, there is no evidence showing that the claimant had any self-imposed physical limitations or restrictions prior to the January 8, 2013 work injury. In fact, the claimant testified that prior to the incident, he had no problems performing his job duties. The claimant's testimony is corroborated by the lack of any evidence to the contrary. Nor did the respondent present any probative evidence disputing the claimant's testimony, or Ms. Gartin's testimony.
During the hearing, the claimant credibly testified that since his injury, he has continued in immense and debilitating pain and been placed on physical restrictions. The evidence before me shows that the claimant spends most of his day lying on the couch or in bed. According to the claimant, his compensable injury has resulted in his inability to perform prior work and engage in certain recreational activities, especially with his two toddler-aged sons. The claimant is unable to walk or engage in any type of exercise. Therefore, he has gained approximately 40 pounds since his compensable injury of January 8, 2013. To further complicate matters, the claimant is unable to take prescription medications for relief of his symptoms. His testimony demonstrates that he takes Aleve for pain. Moreover, the claimant has gotten little to no relief from physical therapy treatment and epidural steroid injections.
The claimant denied having sustained any subsequent injury to his low back. The claimant testified he is now willing to undergo the spinal fusion surgery recommended by Dr. McCarthy. She opined on April 18, 2013, that the claimant's recent injury exacerbated his preexisting/underlying condition. Prior to this, Dr. Mason opined on April 5, 2013, that the claimant might require a lumbar fusion at multiple levels to stabilize his back.
....
Therefore, based on the expert opinions of Dr. McCarthy (the claimant's treating orthopedic spinal surgeon) and Dr. Mason; the testimony elicited from the witnesses during the hearing; there being absolutely no evidence of any subsequent trauma or new injury; his lack of prior symptoms; and because conservative treatment modalities have failed to provide any relief of his symptoms, I find that the claimant's compensable back injury of January 8, 2013, is at *904 least a contributing factor in his need for lumbar fusion, See Thomas v. Entergy Arkansas, Inc. , Full Workers' Compensation Commission, Opinion filed January 24, 2006 (F308759). As such, I find that the lumbar fusion surgery, as recommended by Dr. McCarthy is causally related to the claimant's compensable injury of January 8, 2013. Pursuant to Ark. Code Ann. § 11-9-508, the respondents are liable for the expense of this additional treatment, in the form of a spinal fusion, as recommended by his treating surgeon, Dr. McCarthy.
While I realize that Dr. Kelly opined that the claimant suffered a temporary exacerbation/back sprain, and his need for surgery would not be related to the work injury; however, due to all of the foregoing evidence to the contrary, particularly the persistent nature of the claimant's medically documented symptoms, and because the MRI demonstrated acute reactive edema in the pars region of both levels suggesting a more acute process, I have attached minimal weight to this opinion.
Additionally, Dr. Peeples opined that he did not discover an acute injury causing the two-level abnormalities in the lumbar spine, or an explanation of long term strain complaints, I have attached minimal weight to his opinions, due to all of the foregoing evidence to the contrary. I also think it is noteworthy that Dr. Peeples did not conduct a physical examination of the claimant.
And with respect to appellee's request for additional TTD benefits, the ALJ made the following findings:
Here, the claimant sustained a compensable injury to his lower back on January 8, 2013. Since this time, the claimant has continued in excruciating and debilitating pain, along with other related symptoms. The claimant credibly testified that he attempted to work on light duty restrictions after the incident but was able to work for only one day. There is no evidence that the respondents attempted to find other work within the light duty restrictions placed on the claimant by Dr. McCarthy.
The claimant's testimony and the testimony of Ms. Gartin demonstrates that the claimant has been unable to perform gainful work activities, at least since May 6, 2013. currently, the claimant is in need of a spinal fusion, in an attempt to get some relief of his symptoms. With this in mind, I find that the claimant has remained within his healing period (since his injury) and suffered a total incapacity to earning wages, at least since May 6, 2013 (except for the one day he worked), and continuing through his upcoming spinal fusion, and to the point he is determined to be at maximum medical improvement by his treating physician, Dr. McCarthy.
Appellants appealed, and the Commission issued an opinion on March 29, 2018, in which it affirmed and adopted the September 8, 2017 opinion of the ALJ. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Id. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. Id. Appellants filed a timely notice of appeal on April 27, 2018.
In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence.
*905 Williams v. Ark. Dep't of Cmty. Corr. , 2016 Ark. App. 427, 502 S.W.3d 530. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. Id. Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. Id. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. Id. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. Id. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. Id. Finally, this court will reverse the Commission's decision only if we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Id.
The Commission here was confronted with opposing medical opinions, and it is within the Commission's province to reconcile conflicting evidence, including the medical evidence. Ark. Health Ctr. v. Burnett , 2018 Ark. App. 427, 558 S.W.3d 408. The Commission has the duty to weigh medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. Id. It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. Id. The ALJ's and the Commission's opinions evaluate and discuss all the relevant evidence, so no evidence was arbitrarily disregarded. SSI, Inc., supra. This is a classic "dueling-doctors" case in which this court is bound by the Commission's findings. Under the particular facts of this case, we cannot say that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Therefore, we affirm the Commission's decision to award additional medical treatment.
Additionally, we hold that substantial evidence does support the award for TTD benefits until appellee is declared to be at MMI by Dr. McCarthy following his spinal-fusion surgery. Appellants mischaracterize the decision of the Commission's award of TTD benefits as "indefinite." The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. Ark. Dep't of Parks & Tourism v. Price , 2016 Ark. App. 109, 483 S.W.3d 320. The testimony of appellee and his mother-in-law, Ms. Gartin, regarding appellee's limitations after his compensable injury emphasize the restrictions placed on his abilities and activities because of his compensable injury. Ms. Gartin noted:
He's in severe pain. I mean, he's in-he's in severe pain. I mean, there's times when he's crying he's hurting so bad and you can see that he-he might try to do something like the-like filling his son's sippy cup up and he's grimacing so you know he's hurting and it's-you know, it's not that he doesn't want to do those things. He wants to do things for his kids and be with his kids and do the normal dad things, but he can't do that.
The record before us reflects that even with these limitations, appellee attempted to obtain work from Lowe's that was within his light-duty restrictions imposed by *906 Dr. McCarthy on April 18, 2013. Although Lowe's indicated it had work for appellee, it was never forthcoming with information about such a job or even if appellee was scheduled to work. Despite appellee's attorney forwarding correspondence to Lowe's workers'-compensation carrier requesting this information, none was ever received. Accordingly, we hold that there was no error in finding that Lowe's refused to provide work for appellee within his restrictions. Also, our review of the record, and specifically the ALJ's evaluation of the testimony of appellee and Ms. Gartin regarding his continuing limitations, supports the determinations that appellee has not been able to perform gainful activities and that because he needs the spinal-fusion surgery, he remains within his healing period.
We are mindful of Lowe's interpretation of the Commission's order that arguably appellee has the ability to indefinitely delay the spinal-fusion surgery and still receive TTD benefits by continuing to smoke. But based on our review of the record before us, we decline to hold that appellee's continued smoking rises to the level of an independent intervening cause of his back pain that has indefinitely prolonged his disability. There was substantial evidence to support the Commission's award of additional medical treatment and TTD benefits; accordingly, we affirm the Commission's decision.
Affirmed.
Glover and Vaught, JJ., agree.

Prior to his permanent employment with Lowe's, appellee had worked there twice as a seasonal worker and as an unloader/receiver.

Appellee was not able to return to Dr. McCarthy because his return appointment was canceled by the physician's office and then because the workers'-compensation adjuster refused to authorize a return appointment.