SOUTHEAST ARKANSAS HUMAN DEVELOPMENT
CENTER, et al. *v.* Sue J. COURTNEY

CA 06-1046                                    257 S.W.3d 554

Court of Appeals of Arkansas
Opinion delivered May 23, 2007

*Richard S. Smith*, Public Employee Claims Division, for appellants.

*Kenneth E. Buckner,* for appellee.

ROBERT J. GLADWIN, Judge. Appellants Southeast Arkansas Human Development Center (Employer) and the Public Claims Division (Carrier) bring this appeal from the June 15, 2006, decision of the Workers' Compensation Commission (Commission) affirming and adopting the administrative law judge's (ALJ) findings that the treatment recommended by Dr. Edward Saer was reasonable and necessary, that appellee's healing period had not ended, and that appellants had controverted appellee's entitlement to permanent-partial-disability benefits. On appeal, appellants argue that the Commission erred in finding that appellee was entitled to the course of treatment recommended by Dr. Saer, at appellants' expense, and that they had controverted her right to permanent-partial-disability benefits. We affirm.

Appellee was born on May 19, 1949, completed a high-school education, and has work experience that includes grading lumber and manufacturing work. Her health history includes lumbar-degenerative-disc disease, depression, a July 2002 back injury that was treated conservatively, and carpal-tunnel-syndrome surgery in the late 1990s. She began working for Employer in 1999.

On November 13, 2003, appellee was attempting to restrain a patient in a straight jacket when she was kicked and knocked over, which resulted in an injury to her back, consequential pain in her right leg, and difficulty walking. She was treated conservatively by Dr. Joe Wharton, Dr. David Reding, Dr. Barry Baskin, Dr. Thomas Hart, Dr. Edward Saer, and Dr. Scott Schlesinger, but remained symptomatic and desired to undergo a surgical procedure recommended by Dr. Saer.

Dr. Wharton diagnosed appellee with extensive multilevel-degenerative-disc disease and traumatic sacroillitis, but stated that the work injury produced different symptoms, thus he concluded that she had sustained a new injury. Diagnostic testing indicated bulging discs, which contributed to the stenosis, but no herniation or nerve-root compromise. Dr. Wharton excused appellee from work and prescribed medication and physical therapy. His March 15, 2005 report indicated that she developed adverse side effects from the medication.

Dr. Reding examined appellee on January 21, 2004, and prescribed epidural-steroid injections for her degenerative-disc

disease at L4–5, and use of a rigid–lumbosacral corset and a TENS unit. Dr. Reding's reports from March 22, 2004, and April 21, 2004, mentioned surgical intervention, stating that appellee "may eventually come to an interbody fusion," but concluded that appellee was not a good candidate because she had not responded to treatment with the corset, which presumably mimicked the stabilizing effects of a fusion procedure.

Dr. Baskin, a neurologist, evaluated appellee on May 13, 2004, at the urging of appellants, and opined that her work–related injury exacerbated preexisting degenerative–disc disease and recommended intra–disc injections and changes in medication. Dr. Hart, a pain specialist, examined appellee on July 20, 2004, performed the injections, which provided only temporary relief, and discussed surgery with her. He found objective evidence of a leak that correlated to appellee's back pain, and in his report dated July 22, 2004, stated that decompression and fusion of the lumbar spine might be the "way she is heading, if she continues the failed conservative care." Appellee returned to Dr. Baskin on August 9, 2004, accompanied by the nurse/caseworker, Barbara Acuff, who was assigned to her by Carrier. Dr. Baskin again stated that the work–related injury exacerbated preexisting degenerative–disc disease. At that time he recommended that she should be considered a candidate for fusion surgery and referred appellee to Dr. Saer. Dr. Saer's September 16, 2004 report indicated that appellee was a candidate for surgery[1] to address the pain caused by the degenerative–disc disease at L4–5 and L5–S1.

Appellant was then evaluated by another surgeon, Dr. Schlesinger, on November 1, 2004, at which time Dr. Schlesinger opined that the work–related injury aggravated, but did not cause, her preexisting degenerative–disc disease. Dr. Schlesinger disagreed with Dr. Saer's recommendation for surgery, and recommended traction and a TENS unit. In a letter dated April 1, 2005, Dr. Schlesinger recommended that appellee discontinue her narcotic medication, tapering off under medical supervision, and instead using anti–inflammatory medication. He assessed an impairment rating at six percent to the body as a whole, commenting that her April 1, 2005 functional-capacity evaluation (FCE)

---

[1] He recommended spinal fusion L4 through S1 with a possible interbody fusion at L4–5.

showed that appellee was capable of performing a job with light physical demands, despite displaying inconsistent and unreliable effort.

Linda Amaden, claims adjuster for Employer, received a telephone call from Ms. Acuff on April 1, 2005, advising that Dr. Schlesinger had determined that appellee was at maximum-medical improvement and would be making an impairment rating, but Ms. Acuff did not tell Ms. Amaden what that rating would be. At that time, temporary-total-disability benefits were stopped. Apparently, Ms. Amaden then had difficulty obtaining the relevant reports from Dr. Schlesinger, with his April 1, 2005 rating report not arriving until May 6, 2005. The report and invoice were forwarded to an outside company, Systemedic, for audit against the FCE schedule. Ms. Amaden received the report back in her office on May 13, 2005, and spoke with her supervisor, Terry Lucy, about liability for the impairment rating and settlement options. Ms. Amaden telephoned appellee and spoke to her husband on May 18, 2005, notifying him that appellee would be entitled to permanent-partial-disability benefits based on the impairment rating and inquiring whether she might be interested in a settlement offer. Ms. Amaden advised him that she would be on vacation until May 31, 2005, and her understanding was that he planned to discuss the offer with appellee, and possibly an attorney, and get back to her with a decision. Appellee and her husband did not return the call to Ms. Amaden, and instead, she received a letter from appellee's attorney dated June 7, 2005. Assuming the letter amounted to a rejection of the settlement offer, Ms. Amaden ordered the check on June 8, 2005, for the lump-sum amount of appellee's permanent-partial-disability benefits. Appellee did not receive her benefits until June 10, 2005, via check dated June 8, 2005. The check covered the period from April 2, 2005, through June 24, 2005.

The ALJ stated in her December 14, 2005 opinion that appellee sustained a compensable back injury that aggravated a preexisting condition of degenerative-disc disease, and that she had been unsuccessfully treated by the above-described physicians. The ALJ pointed out that Drs. Wharton, Baskin, Hart, and Saer had all recommended surgery, but Dr. Schlesinger suggested repeating her conservative care. The ALJ admitted that surgical treatment for degenerative-disc disease was controversial, but reiterated that Dr. Hart had documented objective evidence of a leak in the disc that was consistent with appellee's pain. She stated

that appellants were liable for appellee's pain management and that conservative treatment had failed. She also stated that appellants delayed payment of permanent-partial-disability benefits for over two months despite having notice of the rating through their agent, Ms. Acuff, and that appellee had to engage the services of an attorney in order to obtain payment of the benefits and seek continuing medical treatment. The ALJ found that appellants' delay constituted controversion, and that appellee's healing period had not ended. The ALJ awarded temporary-total-disability benefits from April 1, 2005, to a date yet to be determined, and found that the course of treatment recommended by Dr. Saer was reasonable and necessary in connection with the compensable injury pursuant to Ark. Code Ann. § 11-9-508 (Supp. 2005). On June 15, 2006, the Commission affirmed and adopted the ALJ's decision. This appeal followed.

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods S.W.*, 70 Ark. App. 319, 17 S.W.3d 817 (2000). In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *See Death & Permanent Total Disability Trust Fund v. Branum*, 82 Ark. App. 338, 107 S.W.3d 876 (2003). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *See Branum, supra*. Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order.

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Smith v. City of Fort Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). If reasonable minds could reach the conclusion of the Commission, its decision must be affirmed. *K II Constr. Co. v. Crabtree*, 78 Ark. App. 222, 79 S.W.3d 414 (2002). We cannot undertake a de novo review of the evidence and are limited by the standard of review in these cases. *Id*. The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *Smith-Blair, Inc. v. Jones*, 77 Ark. App. 273, 72 S.W.3d 560 (2002). It is well settled that the Commission has the authority to accept or reject a medical opinion and the authority to determine its medical soundness and probative force. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998). It

is the responsibility of the Commission to draw inferences when the testimony is open to more than a single interpretation, whether controverted or not; and when it does so, its findings have the force and effect of a jury verdict. *Id.* The Commission is not required to believe the testimony of any witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief; once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Logan County v. McDonald*, 90 Ark. App. 409, 206 S.W.3d 258 (2005). Speculation and conjecture cannot substitute for credible evidence. *Smith-Blair, Inc. v. Jones, supra.*

### I. Additional Medical Treatment

Appellants point out that of all the treating physicians, only Drs. Saer and Schlesinger were surgeons. They contend that Dr. Schlesinger specifically discussed why he thought surgery would not be helpful, in that a fusion procedure was unlikely to relieve her pain and that he thought better addressed spinal instability than degeneration and pain. Dr. Schlesinger also noted that he saw no changes in appellee's MRI from 2002 to 2003, and therefore, was unable to conclude that appellee's lumbar-degenerative-disc disease could be a result of the November 2003 compensable injury. Although Dr. Reding discussed surgery with appellee, he was reluctant to recommend it and was of the opinion that her pain resulted from her long-standing degenerative-disc disease. That opinion was apparently shared by Dr. Baskin, although he did comment that the current condition appeared to have been exacerbated by the work injury.

Appellee takes issue with appellants' creative position that her healing period ended on April 1, 2005, simply because Dr. Schlesinger issued the six-percent-impairment rating. She contends that he was merely an evaluating, rather than a treating, physician and recommended only a TENS unit and physical therapy. Both of these options had been previously utilized and were unsuccessful. She contends that the claims adjuster chose to accept Dr. Schlesinger's opinion over that of the other physicians, even though "as far as the 'medical choir' is concerned, Dr. Schlesinger is singing a solo." There was substantial agreement among the other doctors that there was other treatment available that might very well help her condition. It is the province of the Commission to weigh conflicting medical evidence, and the resolution of conflicting evidence is a question of fact for the

Commission. *See Fayetteville Sch. Dist. v. Kunzelman*, 93 Ark. App. 160, 217 S.W.3d 149 (2005). As such, we agree that there was substantial evidence that her condition had not stabilized and she has not been as far restored as the permanent nature of her injury would permit, and therefore, temporary-total-disability benefits should not have been stopped as of April 1, 2005. *See Clairday v. The Lilly Co.*, 95 Ark. App. 94, 234 S.W.3d 347 (2006). Appellee was entitled to further medical treatment. We affirm on this point.

## II. Controversion of Benefits

Arkansas Code Annotated section 11-9-715(a)(2)(B) (Repl. 2002) provides that whenever the Commission finds that a claim has been controverted, in whole or in part, the Commission shall direct that fees for legal services be paid to the claimant's attorney. One of the purposes of the attorney's fee statute is to put the economic burden of litigation on the party who makes litigation necessary. *Lee v. Alcoa Extrusion, Inc.*, 89 Ark. App. 228, 201 S.W.3d 449 (2005). Whether a particular claim is controverted is a question of fact for the Commission. *Id.*

The mere fact that a party investigates a claim prior to admitting liability does not require a finding of controversion. *Stucco, Inc. v. Rose*, 52 Ark. App. 42, 914 S.W.2d 767 (1996). Additionally, appellants point out that the mere fact of a delay in the payment of benefits does not, in and of itself, constitute controversion of those benefits, especially where the compensability of the injury has been accepted. *See Walter v. Southwestern Bell Tel. Co.*, 17 Ark. App. 43, 702 S.W.2d 822 (1986). They maintain that it is clear from Ms. Amaden's testimony that they had no such intention with respect to appellee's benefits. Appellants contend that the delay in making payment was caused by (1) the difficulty in obtaining the actual rating report from Dr. Schlesinger; (2) appellee's request for time to consider the settlement offer and possibly discuss it with an attorney; (3) Ms. Amaden's vacation, about which appellee was made aware; (4) appellee's failure to timely respond to the settlement offer.

Additionally, appellants take issue with the ALJ's finding that they had notice of the rating through their agent, Ms. Acuff, prior to receiving the report. Ms. Acuff's April 19, 2005 report, the first one following Dr. Schlesinger's April 1, 2005 evaluation, notes that she asked Dr. Schlesinger about an impairment rating, and he said that "he would include that information in his report."

Appellants assert that Ms. Acuff did not know what that rating would be, and that it could have been zero percent. They claim that Ms. Acuff had sufficient information to inform Ms. Amaden that Dr. Schlesinger had found that appellee had reached maximum medical improvement, which appellants relied upon as support for the discontinuation of the temporary-total-disability benefits, but not adequate information to quantify the final-rate percentage. Additionally, Ms. Amaden testified that had she received a report of that impairment rating from Ms. Acuff during that telephone call, she would have started benefits based upon that information.

█ The Commission had substantial evidence before it to conclude that appellants had controverted appellee's entitlement to benefits for purposes of awarding an attorney fee. It is undisputed that the rating report from Dr. Schlesinger was dated April 1, 2005, but Carrier did not issue a check for appellee's permanent-partial-disability benefits until June 8, 2005. The Commission could have properly disbelieved appellants' assertion that they did not learn about the permanent-partial-disability rating on April 1, 2005, as did the ALJ in stating in her opinion that "the [C]arrier had notice of the rating through their agent, the case manager assigned to accompany the claimant to all of her doctor's visits." To reiterate our standard, whether a claim is controverted is a question of fact for the Commission. *See Lee, supra.* Further, the Commission is not required to believe the testimony of any witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief; once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Logan County, supra.* Accordingly, we affirm on this point as well.

Affirmed.

HART and ROBBINS, JJ., agree.