Cite as 2019 Ark. App. 523

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
**No.** CV-19-148

|  |  |
|---|---|
| | **Opinion Delivered:** November 6, 2019 |
| WHITE COUNTY JUDGE AND ASSOCIATION OF ARKANSAS COUNTIES RISK MANAGEMENT SERVICES | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| APPELLANTS | [NO. G309930] |
| V. | |
| BRUCE MENSER | |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellants, White County Judge (employer) and Association of Arkansas Counties Risk Management Services (insurance carrier) (collectively appellants), appeal from an April 24, 2018, opinion by the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the findings of fact and conclusions of law made by the administrative law judge (ALJ) in favor of appellee, Bruce Menser[1] (sometimes referred herein as claimant). The Commission unanimously determined that Menser, a forty-three-year-old White

---

[1]The Commission also unanimously affirmed and adopted the July 5, 2017, opinion of the ALJ. However, we reversed and remanded for the Commission to apply the correct standards regarding the burden of proof on the statute-of-limitations issue. *See White County Judge v. Menser*, 2018 Ark. App. 297, 549 S.W.3d 416. On remand, the ALJ filed an amended and supplemental opinion on August 8, 2018, amending his findings regarding the statute-of-limitations issue but noted that the remainder of the July 5, 2017, opinion remained the same and was not otherwise affected. On January 31, 2019, the Commission unanimously adopted the ALJ's August 8, 2018, opinion. Therefore, any reference to the Commission's findings and holdings are in reference to those ALJ's opinions.

County deputy sheriff, sustained a brain injury and neuropathy by inhaling sulfuric acid fumes that had leached from the battery in his patrol car. The Commission further found that Menser's claim for additional medical benefits was not barred by the statute of limitations and that he is entitled to reasonable and necessary medical treatment of his compensable brain injury and neuropathy. On appeal, appellants first urge us to reverse the determination of the Commission based on a linguistic technicality. Specifically, they contend that the statute of limitations barred Menser's claim because he failed to timely claim "additional" medical benefits pursuant to Arkansas Code Annotated section 11-9-702(c) (Repl. 2012). Alternatively, they argue that substantial evidence does not support the Commission's decision that Menser suffered a compensable injury in the form of a brain injury and neuropathy. We affirm.

## I. *Relevant Facts*

In December 2013, Bruce Menser had been a deputy sheriff for the White County Sheriff's Department for ten years. On December 16, 2013, Menser became ill while on patrol. Menser called his dispatcher for assistance. Another deputy arrived on the scene and immediately detected a strong odor of sulfur. The deputy advised Menser to get out of his patrol car. Menser was subsequently transported by ambulance to the White County Medical Center (WCMC) emergency room, where he complained of dizziness, headache, and nausea. Menser was released later that evening; however, he returned to the WCMC emergency room the following day(s). Menser continued to receive medical treatment for well over a year.

Because Menser was unable to return to work, he went to the sheriff's department to remove his personal effects from his patrol car. When Menser opened the trunk, he

observed a white residue in the wheel area and all over the cover of a new battery that had recently been installed. Upon closer inspection, Menser further observed that the battery cover had scorch marks on it, and it looked like the battery had been on fire. It also appeared that the contents of the battery had leaked all over the floor of the trunk.

Only five days after the "accident," on December 20, 2013, the insurance carrier filed FORM AR-1 with the Arkansas Workers' Compensation Commission, which is the employer's "First Report of Injury or Illness." This form was signed by the representative of the employer and by the adjuster for the insurance carrier. The same day, the insurance carrier filed Form AR-2 "Employer's Intent to Accept or Controvert Claim" wherein it declared that the claim was "ACCEPTED AS COMPENSABLE." Menser did not file a Form AR-C "Claim for Compensation" or otherwise formally request any compensation since appellants had quickly accepted the claim as compensable and had begun making payments. Appellants continued to accept the claim as compensable and paid medical and temporary total disability (TTD) benefits for four or five months until early April 2014.

Kim Nash, the insurance adjuster, testified that in late March or early April in consultation with the insurance carrier's attorney, the insurance carrier decided to controvert the claim in its entirety and suspend all compensation. By the time the insurance carrier controverted the claim, it had paid $25,136.45 in medical and indemnity benefits. The last date of compensation was April 21, 2014.

Because compensation had been voluntarily and promptly paid by the insurance carrier commencing within a few days of the accident, Menser never filed a Form AR-C "Claim for Compensation." Then, after the claim was controverted, and the payment of

3

compensation suspended in early April, on July 11, 2014, Menser's attorney submitted a request-for-hearing letter to the Commission. The letter provides as follows:

> Re: Bruce Menser v. White County Sheriff's Department, WCC File No G309930
>
> Dear Ms. Washington:
>
> Please set this case for hearing on medical benefits, and temporary total disability. I am reserving the issue of PTD.
>
> . . . .
>
> /s/John Ogles, Attorney

On August 6, 2014, Menser filed his prehearing questionnaire wherein he requested "payment of benefits," TTD, permanent total-disability (PTD) benefits, rehabilitation, wage loss, and attorney fees and attached thereto an index of medical records. Two days later, on August 8, 2014, appellants submitted their prehearing questionnaire in which they denied the claim in its entirety, contending there were neither objective medical findings nor medical proof of injury. A month later, on September 15, 2014, a prehearing telephone conference was held, and the ALJ set the matter for a hearing on the merits on November 17, 2014. The September 15, 2014, prehearing order lists the issues to be presented at the hearing, including compensability, TTD, *medical benefits*, and attorney's fees.

According to Menser's attorney, sometime between the preconference telephone conference and the hearing on the merits, he became aware that appellants' attorney had been communicating ex parte with Menser's treating physicians seeking personal health information about Menser. Menser's attorney filed with the Commission a motion for relief to prohibit these ex parte communications. On November 10, in another prehearing telephone conference, the parties resolved this dispute, and in a follow-up email from

4

appellants' attorney to the ALJ, appellants' attorney agreed to refrain from ex parte communications with claimant's physicians. The parties also agreed that discovery was incomplete and that a continuance was necessary. In the same email, appellants' attorney advised the ALJ that Menser would notify the Commission when discovery was complete and would again request a hearing. The ALJ agreed, continued the November 17 hearing, and advised the parties that the file would be "returned to the Commission's general files."

While discovery was apparently proceeding, Menser continued to receive medical treatment. For some reason not disclosed in the record, neither party requested a new hearing date for over two years. On December 19, 2016, Menser's attorney emailed the Commission and "renewed" his request for a hearing. According to the subsequent opinion filed by the ALJ, the issues to be litigated were whether Menser's claim for additional medical benefits was barred by the statute of limitations, whether the injuries were compensable, and whether Menser was entitled to receive reasonable and necessary medical treatment. Appellants expressed two separate arguments pertaining to their statute-of-limitations defense: (1) Menser had failed to request "additional medical benefits" as opposed to "medical benefits," i.e., the claimant failed to use the word "additional," in order to toll the statute of limitations; and (2) because Menser had failed to request additional compensation for more than two years since the date of his injury, his claim for additional compensation was now barred.

The issues were tried on April 6, 2017, and the ALJ rendered an opinion on July 5, 2017. Regarding appellants' contention that all additional compensation was barred by the expiration of the statute of limitations, the ALJ determined that the statute of limitations did

5

not bar Menser from receiving all additional compensation. On this issue, the ALJ specifically stated,

> No FORM AR-C has been filed in this case. That is the means for filing a "formal claim." [String citation omitted.] While a form AR-1 [Employer's First Report of Injury or Illness] was filed, that does not suffice to instigate a claim.
>
> However, other means exists to file a claim other than a FORM AR-C. In *Downing v. Univ. of Ark*, 1999 AWCC 75 . . . the Commission stated:
>
>> While it appears that no court has addressed the minimum requirements under Arkansas law to state an adequate "petition for review," in *Cook v. Southwestern Bell*, 21 Ark. App. 29 (1987) the Arkansas Court of Appeals discussed the minimum requirements necessary for correspondence to the Commission to constitute a claim for additional compensation for the purpose of tolling the applicable statute of limitations. In that case, the Court held that an attorney's correspondence notifying the Commission that he has been employed to assist a claimant in connection with unpaid benefits is sufficient to state a claim for additional compensation where the correspondence also lists the claimant's name, the employer's name and the WCC file number. . . . Moreover, we have interpreted *Cook* as requiring that correspondence be intended as a claim for additional benefits (1) identify the claimant, (2) indicate that a compensable injury has occurred, and (3) convey the idea that compensation is expected.

The ALJ determined that the request-for-hearing letter, dated July 11, 2014, from Menser's attorney to the Commission constituted the filing of the claim under the *Cook* factors. Specifically, the ALJ determined that in the absence of a Form AR-C, a claim could be commenced by Menser or his attorney by filing a letter with the Commission that provides the WCC claim number, the claimant's name and address, the employer information, and a description of the relief sought.

On the appellants' second statute-of-limitations argument that Menser's claim is now barred because it had been over two years since the date of his injury, the ALJ also disagreed. The ALJ determined that the November 17, 2014, hearing on the merits had been continued at the request of both parties and that Menser's July 11, 2014, claim had been

6

tolled since that time. Because the ALJ found that appellants failed to prove by a preponderance of the evidence that Menser's claim was time-barred, the ALJ additionally determined that Menser had sustained a compensable injury and was entitled to reasonable and necessary medical treatment of his compensable brain injury and neuropathy.

Appellants appealed to the Commission. The Commission unanimously affirmed and adopted the July 5, 2017, opinion of the ALJ, which was subsequently appealed to this court. We reversed and remanded. *See Menser*, 2018 Ark. App. 297, 549 S.W.3d 416. In doing so, we held that the Commission applied the wrong legal standard when it relied on the standards set forth in *Cook* rather than considering Arkansas Code Annotated section 11-9-702. *Id.* Moreover, we held that the Commission erroneously stated that appellants had the burden of proving that the claim was time-barred. *Id.* Rather, it is the claimant's burden to prove that a claim is timely filed. *Id.*

On remand, the ALJ applied the correct burden of proof and filed an amended and supplemental opinion on August 8, 2018. The supplemental opinion amended the ALJ's findings regarding the statute-of-limitations issue but noted that the remainder of the previous July 5, 2017, opinion remained the same and was not otherwise affected. In the supplemental opinion, the ALJ found that the contents of the ALJ's September 15, 2014, prehearing order sufficiently stated Menser's claim for additional medical benefits in compliance with Arkansas Code Annotated section 11-9-702.

Appellants appealed the ALJ's decision; again, the Commission unanimously affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings

7

and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's unanimous opinion. *Id.* This appeal followed.

## II. *Standard of Review*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347 (2009). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock*, *supra*.

8

III.  *Statute-of-Limitations Issue*

A claimant must prove that he or she acted within the time allowed for filing a claim for additional compensation.  *Farris v. Express Servs., Inc.*, 2019 Ark. 141, 572 S.W.3d 863.  Additionally, the running of the statute of limitations is largely a question of fact.  *Id.*  Arkansas Code Annotated section 11-9-702 recognizes two types of claims.  *Dillard v. Benton Cty. Sheriff's Office*, 87 Ark. App. 379, 192 S.W.3d 287 (2004).  For purposes of this opinion, there are two general types of claims: (1) the initial claim and (2) claims for additional compensation.  *See* Ark. Code Ann. § 11-9-702.  Subsection (a) covers an initial claim—a claim that is filed prior to receiving any benefits.  *Id.*  Initial claims must be filed within two years of the date of injury.  *Id.*  The second type of claim—a claim for additional compensation—is set out in subsection (b) of the statute.  *Id.*  According to the statute, in cases in which any compensation has been paid, the claim for additional compensation, including disability or medical, will be barred unless filed within one year from the date of the last payment of compensation or two years from the date of the injury, whichever is greater.  *Id.*  Additionally, subsection (c) states that "[a] claim for additional compensation must specifically state that it is a claim for additional compensation."  No one disputes that the claim at issue herein is for additional medical benefits and that the claim must satisfy both subsections (b) and (c) of the statute.  Further, the Commission determined, and the parties do not dispute, that the relevant deadline for filing a claim within the meaning of subsection (b) was December 16, 2015—two years from the date of Menser's December 16, 2013, injury.

The Commission found that, although Menser had never filed a claim via a Form AR–C "Claim for Compensation," the ALJ's September 15, 2014, prehearing order filed

after a prehearing telephone conference was sufficient to constitute a claim for additional medical benefits. The prehearing order specifically stated the following in relevant part:

By agreement of the parties, the stipulations applicable to this *claim* are as follows:

1.     The Arkansas Workers' Compensation Commission has jurisdiction of the within claim.

2.     The employee-employer-insurance carrier relationship existed at all relevant times, including on December 16, 2013.

3.     The claimant's compensation rates are $472/$354.

4.     The claim has been controverted in its entirety, *even though some benefits have been paid*.

5.     All issues not litigated here are reserved under the Arkansas Workers' Compensation Act.

ISSUES

By agreement of the parties, the issues to be presented at the hearing are as follows:

1.     Compensability.

2.     Temporary total disability compensation-dates to be provided.

3.     *Medical benefits*.

4.     Attorney fees.

(Emphasis added).

Appellants disagree with the Commission's decision. They argue that the Commission's finding "is based on assumption, speculation and an erroneous interpretation of the applicable case law." Appellants explain that Menser never requested "additional medical benefits," using that exact phrase as they believe is required under subsection (c) of the statute. They argue that the words "medical benefits" without the accompanying word "additional" is insufficient. They further argue that a written request is required and that it

10

is also unclear from the prehearing order whether it was Menser or appellants who added the medical-benefits issue. Finally, appellants generally argue that it is "not equitable to allow a statute of limitations to be tolled indefinitely by a long-ago cancelled request for a hearing." We disagree.

We agree with the Commission that in the context of this claim, Menser did request additional compensation as memorialized through the September 15, 2014, prehearing order even though it failed to use the word "additional" as appellants allege is mandatory. Appellants' argument requires us to interpret and apply Arkansas Code Annotated section 11-9-702(c). We review issues of statutory construction de novo because it is this court's duty to decide what a statute means. *Farris v. Express Servs., Inc.*, 2019 Ark. 141, 572 S.W.3d 863. When we construe the workers' compensation statutes, we must strictly construe them. *Stewart v. Ark. Glass Container*, 2010 Ark. 198, 366 S.W.3d 358. Strict construction is narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Id.* The doctrine of strict construction requires this court to use the plain meaning of the language employed. *Id.*

The pertinent subsection of Arkansas Code Annotated section 11-9-702 provides the following:

> (c) *A claim for additional compensation must specifically state that it is a claim for additional compensation. Documents which do not specifically request additional benefits shall not be considered a claim for additional compensation.*

(Emphasis added.) Although it is clear from the plain language of subsection (c) that a claim for additional compensation must specifically state that it is a request for additional benefits, it does not mandate that a claim must use any magic words in doing so. In other words, a claim is not necessarily untimely if it does not use the specific word "additional." Here, we

11

hold that the prehearing order itself was sufficiently clear to indicate that Menser was specifically claiming additional medical benefits.

Caselaw supports our conclusion that subsection (c) is satisfied in this case. The most analogous case is *Arkansas Power & Light Co. v. Giles*, 20 Ark. App. 154, 725 S.W.2d 583 (1987). There, the claimant checked a previous A-7 form in a manner indicating that he was claiming attorney fees, medical expenses, temporary total-disability benefits, and permanent disability benefits. The claimant did not include the word "additional." In light of the fact that the claimant engaged an attorney and filed a claim almost one and a half years after the appellant had begun paying compensation, we stated that the only reasonable assumption to make was that this claim was for benefits over and above what he was already receiving. Therefore, we held that the claimant should not be barred merely because the word "additional" was not used. Instead, we analyzed that there was no original filing because the appellant had accepted the injury as compensable and that it would be "putting form over substance to say that the claim filed more than seventeen months after the commencement of benefits was an original claim and not a claim for additional benefits." *Giles*, 20 Ark. App. at 157, 725 S.W.2d at 585.[2]

Another helpful case is *Dillard*, *supra*. In *Dillard*, the claimant sought additional benefits for permanent total disability, rehabilitation, attorney fees, and medical expenses.

---

[2]We acknowledge that our supreme court has noted that opinions governed by the pre–Act 796 of 1993 version of the Workers' Compensation Act are no longer controlling regarding the requirements to constitute a claim for additional compensation because prior to the 1993 amendments, Arkansas Code Annotated section 11-9-702 did not contain the present subsection (c). *See Stewart*, 2010 Ark. 198, at 8 n.2, 366 S.W.3d at 362 n.2. However, although *Giles* is not controlling, we find the analysis persuasive and pertinent to the facts of this case.

12

On the claim form, Dillard's attorney checked the boxes located under the initial-benefits section instead of checking the boxes under the additional-benefits section. In other words, just like here, the word "additional" was missing. After failing to timely request a hearing, Dillard's employer moved for a dismissal. The ALJ granted the dismissal, and the Commission accepted the ALJ's findings. We reversed and remanded and held that a mistake—incorrect checkmarks—on the Form AR-C should not time-bar a timely claim. We stated that "Dillard's failure to technically comply with the 'call' of the form" should not be fatal to his claim. *Id.* at 384–85, 192 S.W.3d at 291. We concluded that there was insufficient evidence to support the Commission's finding that Dillard's claim had been properly dismissed, stating that to hold otherwise "[was] a classic example of [putting] form over substance." *Id.* at 384, 192 S.W.3d at 291.

And in *Nabholz Construction Corp. v. White*, 2015 Ark. App. 102, we affirmed the Commission's decision that White's claim for additional benefits tolled the statute of limitations. There, White had filed an AR-C Form with every box checked, including boxes for both initial and additional benefits. Citing *Eskola v. Little Rock School District*, 93 Ark. App. 250, 218 S.W.3d 372 (2005), we explained that a claim request cannot be considered to be both an initial request for compensation and an additional request for benefits at the same time. *Nabholz, supra.* We further explained that whether a claim is an initial request for benefits or a request for additional benefits is a factual question that the Commission must first decide. Because White had been receiving medical, indemnity, and permanent anatomical-impairment benefits for nearly two years before he filed his AR-C Form, we held that the Commission's determination that the form was a request for additional benefits was therefore supported by substantial evidence.

13

Finally, this is not the only context in which our appellate courts have had to determine whether magic words are required in order to comply with certain statutory language found within the Arkansas workers'-compensation statutes. Arkansas Code Annotated section 11-9-102(16)(B) provides that "[m]edical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty." In *Freeman v. Con-Agra Frozen Foods*, our supreme court was asked to decide whether the magic phrase "within a reasonable degree of medical certainty" is required in a medical opinion:

> This court has never required that a doctor be absolute in an opinion or that the magic words "within a reasonable degree of medical certainty" even be used by the doctor. Rather, this court has simply held that the medical opinion be more than speculation. For example, in *Howell v. Scroll Technologies*, 343 Ark. 297, 35 S.W.3d 800 (2001), the opining doctor stated that his patient's exposure at work to a coolant mist was at least fifty-one percent the cause of her respiratory problems. We held that that opinion fell within the standard of a reasonable degree of medical certainty. Accordingly, if the doctor renders an opinion about causation with language that goes beyond possibilities and establishes that work was the reasonable cause of the injury, this should pass muster.

*Freeman*, 344 Ark. 296, 303, 40 S.W.3d 760, 765 (2001). While our supreme court was interpreting a different statute than the one here, the principle is the same. Magic words are not needed, and we do not need to resort to any speculation in this case.

As noted by the ALJ in his August 8, 2018, opinion, we have previously held that the Commission may look to the contents of the prehearing order—and not something prepared by the claimant—to find that a claim for additional compensation had been filed in accordance with section 11-9-702(c). *See Bryant Sch. Dist. v. Aylor*, 2011 Ark. App. 173, 381 S.W.3d 895. Here, the ALJ explained in his opinion that the September 15, 2014, prehearing order stated on its face that "4. The claim has been controverted in its entirety,

14

**even though some benefits have been paid**." (Bold font in original.) Moreover, the prehearing order stated that the issues to be litigated included "**3. Medical benefits**." (Bold font in original.) The Commission found that this language sufficiently stated a claim for *additional medical benefits* under the statute, and we agree. Because the prehearing order stated on its face that some benefits had been previously paid, there can be no question that Menser's claim was for additional medical benefits because a claim request cannot be considered to be both an initial request for compensation and a request for additional compensation at the same time. *Nabholz, supra.* Further, the issue of whether a claim as stated is a claim for additional medical benefits is a question of fact for the Commission to determine. *Nabholz, supra.* And as we stated in *Dillard, supra*, such a tenuous finding as requested by appellants would be a classic example of "putting form over substance." Therefore, despite the omission of the magic word "additional," we conclude that the Commission herein did not err in determining that Menser's claim for additional medical benefits sufficiently tolled the statute of limitations.

Appellants' remaining arguments under this point simply lack merit. Obviously, Menser—not appellants—was the one actually requesting additional medical benefits.

Finally, appellants' general argument that it is "not equitable to allow a statute of limitations to be tolled indefinitely by a long-ago cancelled request for a hearing" equally lacks merit. Appellants more specifically argue that even if the prehearing order was sufficient, the statute of limitations was no longer tolled after the hearing was cancelled and the claim went back to "general files." Appellants explain that according to *Barnes v. Fort Smith Public Schools*, 95 Ark. App. 248, 250, 235 S.W.3d 905, 906 (2006), the statute of limitations is tolled only for a timely request for additional compensation that is "never acted

upon." Here, appellants contend that placing the claim in the "general files" meant that the claim had been "acted upon." We simply disagree.

Our supreme court in *VanWagner v. Wal-Mart Stores, Inc.*, 368 Ark. 606, 249 S.W.3d 123 (2007), stated that the claimant's additional-benefits claim was not time-barred because (1) a hearing was never held on the claim; (2) the claim was placed on inactive status; and (3) a final order was never entered on his case. Similarly, in *Nabholz Construction Corp.*, *supra*, we affirmed the Commission's reasoning that a timely filing of a Form AR-C in 1998 tolled the application of the statute, even though there was more than a two-year gap in the payment of benefits, and despite the filing of a Form AR-4 closing the claim, because White's claim for additional benefits, was neither dismissed nor decided until 2013.

Here, on September 15, 2014, a prehearing order was filed listing the stipulated issues to be presented at a hearing on the merits, including compensability, TTD, "medical benefits," and attorney's fees. The claim was set for a hearing on the merits on November 17, 2014. However, on November 10, 2014, a prehearing telephone conference was held, and the parties agreed that the hearing should be continued to complete discovery. Appellants' attorney sent an email to the ALJ which concluded with "[t]he claimant will contact the Clerk of the Commission when discovery is complete and a hearing is again requested." Based on this telephone conference and the email from appellants' attorney, the ALJ continued the hearing and issued an order stating that the file would be "returned to the Commission's general files." The record does not contain any information as to why Menser did not request a hearing until over two years later. However, on December 19, 2016, Menser's attorney emailed the Commission and "renewed" his request for a hearing. The Commission through the adoption of the August 8, 2018, ALJ opinion, held that the

16

same claim from the September 15, 2014, prehearing order had "remained in the Commission's general files until December 12, 2016." We find that the Commission did not err on this point because a hearing was never held on the claim; the claim was placed on inactive status; and a final order had not been entered at that time. Thus, we affirm the Commission's decision that the statute of limitations was tolled here and did not bar Menser's claim for additional medical benefits.

## III. *Compensable Injuries*

The Commission determined that Menser sustained a brain injury and neuropathy by inhaling sulfuric acid fumes that had leached from the battery in his patrol car. In addition to the brain injury and neuropathy, Menser complained of fibromyalgia, injury to his joints, mental injury, confusion, memory loss, and pulmonary injury. However, the Commission did not find these additional injuries compensable. Before discussing appellants' arguments regarding the compensability of Menser's brain injury and neuropathy, we must first note the following pertinent portions of the ALJ's July 5, 2017, opinion, which was affirmed and adopted by the Commission and was not altered by the ALJ's subsequent opinion dated August 8, 2018:

> The evidence clearly establishes that Claimant was exposed to toxic compounds, including hydrogen sulfide, as a result of the explosion of the battery in his patrol car on the evening of December 16, 2013. The email that Claimant sent to Chief Deputy Miller at 8:44 p.m. that night documents that the battery was malfunctioning; he was having to "jump it every time today and tonight to get it to start." The EMS record shows that Claimant reported that he began feeling ill around 15 minutes after this communication. The battery in Unit 609 was replaced the next morning, December 17, 2013, at Searcy Battery Warehouse. Hargrove, the Searcy Battery Warehouse technician that did this work, swore out an affidavit in which he related that the battery "looked like the top was blown off of it" and "[t]he electrolyte inside the battery was ejected through the top and out of the battery when it exploded." I credit this. The emergency responder reported that Claimant had "a strong smell of rotten eggs on his clothes and a noticeable smell around [the] vehicle." Eskra, whose

17

opinion I credit wrote that hydrogen sulfide, which is generated during the battery charging process, has the smell of rotten eggs. Noting Hargrove's affidavit, Eskra concluded that the "likely and probable scenario" that took place was that the hydrogen sulfide would react with the polyurethane in the seating cushions and "would lead to the smell of plastics"—which Claimant noted in his testimony that he detected. He added that "[o]nce the seat of the top of the battery case was compromised cell dry out would occur and the secondary dangerous reactions [discussed above] would occur. This would include the formation of ammonia analogs such as arsine and stibine. Both Eskra and Bloch opined that the vapors from this would reach the passenger compartment of the vehicle—and the detected smell by the emergency responder confirmed this happened. I credit Claimant's testimony that there was scorching around the battery compartment in the vehicle—further confirming that the battery malfunctioned as Eskra described in his report.

But if there was the presence of a "rotten egg" odor, why did Claimant not smell it even though he had detected the plastic smell earlier? As Dr. Silas opined, "[n]ow, he couldn't smell, because one of the characteristics of this is to destroy the olfactory nerves so that it no longer smells, but everybody around it said, 'He smells like rotten eggs.' Now if he can't smell rotten eggs, he can't smell." I credit this.

Claimant's testimony of experiencing, inter alia, a headache and nausea coincides with the balance of the evidence that establishes that this exposure occurred. What remains to be determined, however, is what compensable injuries, if any, did this work-related exposure cause?

First, he has alleged that he has suffered a compensable injury to his brain. This has allegedly manifested itself in, inter alia, headaches and seizures. On February 19, 2014, he underwent an EEG that was "abnormal" and had "marked localized irritability but generally rapid waves with low amplitude which is abnormal and showing encephalopathy of unknown cause." With this type of EEG, however, seizures cannot be ruled out. According to Dr. Silas, the test results were "abnormal . . . [t]here was nothing on it that was normal. There was no alpha waves or anything that we usually see in the normal brain. There was a lot of irritability throughout with what we call encephalomalacia." He added that "it showed that the brain was under distress. It was very erratic. It was just firing off. It was–there was nothing normal about it. And the whole brain was irritated." He continued: "all I could do was identify this irritability with the whole brain to show the encephalomalacia. Anoxia can do that. Toxicity can do that. Exposure to things that would irritate the brain could do that." He also explained that a blow to the head such as the one that Claimant has reflected in his records would not cause this. Dr. Silas diagnosed Claimant as having encephalomalacia, and explained that the event that caused it did not happen before the battery exposure. After due consideration, I credit his opinion. The Commission is authorized to accept or reject a medical opinion and is authorized to determine its medical soundness and probative value. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). EEG results are

18

measurable and objective findings that can establish a brain injury. *See Duncan v. Unimin Corp.*, 2009 Ark. Workers' Comp. Lexis 262, Claim No. F613086 (Full Commission Opinion filed June 12, 2009), aff'd 2010 Ark. App. 119, 2010 Ark. App. Lexis 139.

Silas testified that Claimant underwent a second EEG that "showed focal lesions, seizure activity, and spike in wave with phase reversal, which is pathognomonic [i.e., specifically indicative] of a seizure disorder." This particular EEG test/report itself is not in evidence. However, his testimony concerning the test results, which are objective and measurable findings, is sufficient in and of itself to establish said results. *See, e.g., Alliston v. Tyson Foods, Inc.*, AWCC No. E711556 (Full Commission Opinion filed September 15, 1998). Evidently Dr. Zolten was not aware of this test result at the time he referred to the possibility that Claimant was suffering from pseudoseizures; consequently, I cannot credit Zolten on this point. Claimant has proven by a preponderance of the evidence that he sustained a compensable brain injury. This was an accidental injury in that it was caused by a specific incident-exposure to the aftermath of the exploded battery in Unit 609— and is identifiable by time and place of occurrence—in that vehicle around 9:00 p.m. on December 16, 2013. Moreover, it caused internal physical harm to the body, it arose out of and in the course of Claimant's employment with Respondent White County, and it required medical services. Claimant has met his burden of proof on this particular injury.

. . . .

Concerning his alleged neuropathy, Dr. Silas testified:

But he also has an abnormal nerve conduction velocity examination that shows that the-all of the sensory nerve system is affected, so it has [to] be systemic. And autoimmune disorder is what would cause his peripheral neuropathy. He has also had some other test where they drew some proteins that-demonstrated that in his lab.

Like the second EEG, neither the nerve conduction study nor the protein test results are in evidence. Moreover, Dr. Voinea on October 1, 2014 wrote that one "was not done already." However, that is not to say that one had not already occurred of which Voinea was not aware, or that the study did not occur thereafter. I credit Dr. Silas' testimony on this matter, and find that such is sufficient to establish the presence of objective and measurable findings of neuropathy. *See Alliston, supra.* The Commission in *Alliston* cogently explained the reasoning behind this:

The dissent argues that Act 796 of 1993 requires introduction into evidence of the actual EMG studies, although the treating orthopedic surgeon credibly opined that these studies confirmed his diagnosis of significant carpal tunnel syndrome. If the dissent's argument were adopted, we would essentially be

19

asserting that Dr. Mitchell was either incompetent or trying to mislead the Commission. Moreover, the Arkansas General Assembly has admonished this Commission to strictly construe the statutory provisions of Act 796. [Citation omitted] In this regard, the legislature expressly instructed the Commission not to liberalize, broaden, or narrow the workers' compensation statutes. [Citation omitted] There is no indication in the record that such studies could be interpreted by or have any significance to a layman. To find that EMG studies must be introduced in order for a claimant to establish medical evidence, supported by objective findings, would impermissibly broaden the scope of Ark. Code Ann. § 11-9-102(16) (Supp. 1997). In addition, such a finding would ultimately require the introduction of every x-ray and diagnostic test performed. This, we decline to do.

I credit Claimant's testimony concerning his neuropathy, which correlates with the medical evidence and with Dr. Silas' testimony. As was the case regarding Claimant's brain injury, this nerve injury was an accidental injury in that it was caused by a specific incident identifiable by time and place of occurrence, which caused internal physical harm to the body, which arose out of and in the course of Claimant's employment with Respondent White County, and which required medical services. Claimant has likewise proven this injury to have been compensable.

. . . .

Claimant has by a preponderance of the evidence that he is entitled to reasonable and necessary medical treatment of his compensable brain and neuropathy injuries as set out in the above-quoted statute. Moreover, I have reviewed Claimant's medical records in evidence, and I find that all of the treatment of Claimant's brain and neuropathy injuries reflected therein was reasonable and necessary.

However, because he has not proven his other alleged injuries to be compensable, he has not shown that he is entitled to reasonable and necessary treatment of them.

Appellants contend that substantial evidence does not support the Commission's decision finding that Menser suffered a compensable injury in the form of a brain injury and neuropathy. To prove the occurrence of a specific-incident compensable injury, the claimant must establish that (1) an injury occurred arising out of and in the scope of employment; (2) the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) the injury is established by medical

20

evidence supported by objective findings as defined in Arkansas Code Annotated section 11-9-102(16); and (4) the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). Section 11-9-102(16) defines "objective findings" as findings that cannot come under the voluntary control of the patient. Moreover, the statute provides that neither complaints of pain nor range-of-motion tests shall be considered objective medical findings. *Id.* The claimant has the burden of proving these elements by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4).

Appellants first argue that "brain injury" is too vague or broad of a term. They additionally criticize the Commission's award of treatment for "neuropathy" because they allege that "neuropathy" is a symptom and not an injury. Further, they argue that Dr. Silas's testimony regarding an abnormal nerve-conduction study is "not substantial evidence of an objective finding on which a compensable injury could be awarded." We disagree.

First, we note that appellants fail to cite any legal authority for their allegations that a "brain injury" and "neuropathy" are not compensable or that an abnormal nerve-conduction study cannot be substantial evidence of an objective finding. Therefore, given the lack of any convincing argument or legal authority, we affirm the Commission's decision. *See Matthews v. Jefferson Hosp. Ass'n*, 341 Ark. 5, 14 S.W.3d 482 (2000). Moreover, we note that we have previously awarded benefits for a "brain injury" and "neuropathy." *See Multi-Craft Contractors, Inc. v. Yousey*, 2018 Ark. 107, 542 S.W.3d 155; *Geo Specialty Chem., Inc. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). Further, in *Clingan*, as was the case here, a nerve-conduction study was performed in order to diagnose

the claimant with neuropathy. Therefore, although appellants seem to dislike the semantics used by the Commission, their arguments as outlined in their brief lack merit.

Appellants' final arguments under this point on appeal are regarding the weight of the evidence and the opinions credited by the Commission. Appellants contend that the Commission's decision to "credit Dr. Silas's opinion over Dr. Simmons' opinion is error and the award of treatment for a brain injury and neuropathy should be reversed." Ultimately, the Commission was confronted with two opinions and credited Dr. Silas. It is within the Commission's province to reconcile conflicting evidence, including the medical evidence. *Boykin v. Crockett Adjustment Ins.*, 2013 Ark. App. 157. The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *See Ark. Human Dev. Ctr. v. Courtney*, 99 Ark. App. 87, 257 S.W.3d 554 (2007). It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Id*. Under the particular facts of this case, we cannot say that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Therefore, we affirm the Commission's decision.

Affirmed.

ABRAMSON, GLADWIN, and WHITEAKER, JJ., agree.

KLAPPENBACH and BROWN, JJ., dissent.

**N. MARK KLAPPENBACH, Judge, dissenting**. I dissent. I would reverse the Commission's decision on the statute-of-limitations issue. While the cases relied on by the majority discuss whether a timely claim for additional benefits had been filed, none of these cases analyzed the requirement at issue here—that the claim "must specifically state that it is

22

a claim for additional compensation." Ark. Code Ann. § 11-9-702(c) (Repl. 2012). This requirement did not exist at the time *Arkansas Power & Light Co. v. Giles*, 20 Ark. App. 154, 725 S.W.2d 583 (1987), was decided. Accordingly, the holding in that case that the claim "should not be barred merely because the word 'additional' was not used" cannot be relied on to reach the same result here. *Id*. at 157, 725 S.W.2d at 585. Both *Dillard v. Benton County Sheriff's Office*, 87 Ark. App. 379, 192 S.W.3d 287 (2004), and *Nabholz Construction Corporation v. White*, 2015 Ark. App. 102, were decided under the current version of the statute; however, subsection (c) was not mentioned in *Nabholz*, and in *Dillard*, this court declined to decide whether the claim was properly classified as one for initial or additional benefits because resolution of the appeal was not dependent on how the claim was classified. Again, these cases cannot be relied on to inform our analysis regarding compliance with subsection (c).

The question of the correct interpretation and application of an Arkansas statute is a question of law, which we decide de novo. *Stewart v. Ark. Glass Container*, 2010 Ark. 198, 366 S.W.3d 358. The Arkansas workers'-compensation statutes must be strictly construed. Ark. Code Ann. § 11-9-704(c)(3). Strict construction is narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Stewart, supra*. The doctrine of strict construction requires this court to use the plain meaning of the language employed. *Id*. We construe the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Farris v. Express Servs., Inc.*, 2019 Ark. 141, 572 S.W.3d 863. Applying these standards, I would hold that the prehearing order does not represent a "claim" filed with the Commission that "specifically state[s] that it is a claim for additional compensation."

BROWN, J., joins.

*Rason M. Ryburn*, for appellants.

*Gary Davis*, for appellee.